752 So.2d 1070 (1999)
Robert PRICE a/k/a Robert L. Price, Jr., a/k/a Robert Lewis Price, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00147-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied November 9, 1999.
Certiorari Denied February 3, 2000.
*1071 James A. Williams, Meridian, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
IRVING, Judge, for the Court:
¶ 1. Robert L. Price was indicted in the Circuit Court of Lauderdale County on or about March 21, 1997 on a charge of felony DUI. On December 1, 1997, Price's motion for a bifurcated trial was granted and the matter was set for trial on the charge of driving under the influence only. On December 2, 1997, a jury found Price guilty on the principal charge of DUI. At a separate hearing conducted on December 22, 1997, the trial judge found that Price had been twice convicted of the offense of driving under the influence of alcohol within the past five years within the meaning of Miss.Code Ann. Section 63-11-30(2) (Rev. 1996), and was therefore guilty of the offense of felony DUI, third or greater offense, and subject to sentencing as provided in Miss.Code Ann. Section 63-11-30(2)(c) (Rev.1996). He then sentenced Price to serve a term of five years in the custody of the Mississippi Department of Corrections and to pay a fine of $2,000, an appearance bond fee of $50 and court costs of $246. Price was further ordered to report to the Lauderdale County Circuit Court within thirty days of release to arrange for payment of court assessments or risk contempt of court. Lastly, Price was ordered to actively participate in and successfully complete the program of alcohol treatment and rehabilitation provided by Mississippi Department of Corrections. This appeal is taken from that judgment with the following issues, taken verbatim from Price's brief, assigned as error:

ISSUES
I. WHETHER THE DEFENDANT WAS ARRESTED WITHOUT PROBABLE CAUSE WHEN THE OFFICER STOPPED HIM AFTER FAILURE TO DIM BRIGHT HEADLIGHT BEFORE DARK AND ALL EVIDENCE ACQUIRED THEREAFTER SHOULD BE SUPPRESSED AND UNDER THE TOTALITY OF THE CIRCUMSTANCES THERE WAS NO PROBABLE CAUSE.
II. WHETHER DEFENDANT WAS DENIED A FAIR TRIAL BY JURY BECAUSE THE JURY WAS INSTRUCTED ON IMPLIED CONSENT, THE DEFENDANT DID NOT TESTIFY AND HIS SILENCE WAS THE SUBJECT OF INSINUATION AT CLOSING ARGUMENT BY THE STATE.
III. WHETHER THE COURT MADE IMPROPER COMMENT AND EMPHASIS ON THE EVIDENCE OF REFUSAL TO TAKE THE INTOXILYZER WHEN IT GAVE AN INSTRUCTION ON THE IMPLIED CONSENT LAW.
IV. WHETHER TESTIMONY ELICITED BY THE STATE OF OTHER CRIMES DENIED DEFENDANT *1072 A FAIR TRIAL AND DUE PROCESS OF LAW.
V. WHETHER THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION OF THE RESULT OF THE ALCOSENSOR FIELD TEST FOR ALCOHOL.
VI. WHETHER THE EVIDENCE OF DRIVING UNDER THE INFLUENCE WAS SUFFICIENT TO SUPPORT THE VERDICT.

FACTS
¶ 2. Lauderdale County Deputy Sheriff Frankie Springer was performing routine patrol duty on A.C. Brown Road on the evening of September 20, 1996, when he met a pickup truck being driven by Robert L. Price. According to Springer, the headlights on the pickup were on high beam, and the driver failed to dim the lights to oncoming traffic. Consequently, Deputy Springer turned his patrol car around and followed the pickup when the driver made a left turn off A.C. Brown Road onto Blizzard Road. Springer testified that he followed the pickup for a distance of approximately 500 feet. Springer's testimony was that while he followed the pickup he observed it travel along the grass line of the left side of the paved road for a distance of about 100 feet, then back to the right side of the road and down the center of the road two or three times before he activated his blue lights and stopped the pickup at 7:34 p.m. He then exited his patrol car, walked to the driver's side of the pickup, and asked the driver to see his driver's license. Price stated that he had no license. Springer then asked Price for his social security number. Price complied by giving Springer Price's social security number.
¶ 3. While Price was still sitting in the pickup, Springer walked back to his patrol car and radioed for information on Price's social security number. Springer testified that information came back that Price's driver's license was suspended. Springer then asked Price to step out of the pickup. It was at that time that Springer noticed the odor of alcohol on Price's breath. It was Springer's testimony that Price "had trouble walking," "staggered a couple of steps" and "did not walk straight." Price's "speech was very slow and slurred, and his eyes were very red."
¶ 4. According to Springer, "The evidence I saw through my five senses led me to believe he was under the influence of alcohol." Springer asked Price to submit to a portable alcosensor breath test. Price complied by taking the test twice. The first test yielded no results. The second test showed a registration of .16. As a result of the second test, Springer placed Price under arrest for suspicion of DUI.
¶ 5. Springer testified that he needed to make arrangements to have the pickup moved off the road following his arrest of Price. There was a passenger in Price's truck, but the passenger was also unlicensed and appeared to Springer to have been drinking. The passenger was able to walk a few yards down the road and secure a licensed driver to move the truck.
¶ 6. Springer transported Price to the courthouse where Deputy Sheriff Gail Anthony asked Price twice to submit to a test on the Intoxilyzer 5000. Price refused both requests, the last refusal was at approximately 8:30 p.m. Anthony testified that Price's eyes "were red, very red" and that she noticed the smell of alcohol coming from Price.
¶ 7. Price filed a motion to suppress the results of the alcosensor breath test, and the motion was granted by the trial judge. However, the results were allowed into evidence during rebuttal when one of Price's witnesses testified that neither test yielded any results.

ANALYSIS OF ISSUES PRESENTED

I. Probable Cause for Price's Arrest

¶ 8. Price argues that under the facts and circumstances set forth at the suppression hearing there existed no probable *1073 cause to get him out of his vehicle, nor was there probable cause to pursue him for not dimming lights. Thus, he reasons, all of the evidence obtained as a result of the arrest must be suppressed and his conviction reversed, resulting in his discharge.
¶ 9. The standard of review for suppression hearing findings is whether or not substantial credible evidence supports the trial court's findings considering the totality of the circumstances. Magee v. State, 542 So.2d 228, 231 (Miss.1989); Nicholson v. State, 523 So.2d 68, 71 (Miss. 1988); Ray v. State, 503 So.2d 222, 224 (Miss.1986). The appellate review should disturb the findings of the lower court only where there is an absence of substantial credible evidence supporting it. Id. at 223-24.
¶ 10. At the suppression hearing, the trial judge, after hearing testimony from Deputy Springer and Price, ruled as follows:
Based upon the testimony that I have heard, based upon the officer who observed the Defendant failing to dim his headlights just before dusk, then he continued to follow him, as he should have, and observed improper lane usage, as a result of those two, he stopped him. And then he smelled alcohol in the car, he asked him to get out and he smelled alcohol on his breath. His eyes were red. He staggered as he walked back to the officer's car. He administered a field sobriety test, which is not admissible. So that is really the only thing before the Court. There are no oral or written statements that the Defendant has given. So the Court finds that there was probable cause to stop the Defendant. And, really, there is nothing else to rule on.
¶ 11. It is clear to this Court, considering the totality of the circumstances, that there was substantial credible evidence to support the trial court's ruling. Finding no absence of substantial credible evidence, the findings of the lower court will not be disturbed. This assignment of error is overruled.

II. Instruction on Implied Consent, Admission of Price's Refusal to Take the Intoxilyzer Test and Comments Made by the Prosecution during Closing Argument

¶ 12. Price contends the court's instruction on implied consent, admission of his refusal to submit to the intoxilyzer test and comments made by the prosecution during closing argument constituted impermissible comments on his failure to testify.

A. The Instruction on Implied Consent
¶ 13. The instruction drawing Price's ire is as follows:
The Court instructs the jury that under the laws of the State of Mississippi, a person who operates a motor vehicle over the public roads of this state has given his or her implied consent to submit to the test administered using the Intoxilyzer 5000 to determine the persons blood alcohol content.
¶ 14. Miss.Code Ann. § 63-11-5 (Rev. 1996) provides in part: "Any person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent, subject to the provisions of this chapter, to a chemical test or tests of his breath for the purpose of determining alcohol concentration." It necessarily follows as a corollary of the implied consent given in the aforementioned statute that it was proper to instruct the jury concerning the implied consent given therein.
¶ 15. Price's argument here is that the instruction is not an accurate statement of the law because the statute authorizing implied consent does not limit itself to the Intoxilyzer 5000 and that granting the instruction amounted to a comment on the evidence by the court. Price further argues that the instruction emphasized one piece of evidence over the rest and helped the State by implication because it focused *1074 the jury's attention on his refusal to submit to the test. He cites Doss v. State, 709 So.2d 369, at pages 403-04 (Miss.1996), which quotes Green v. State, 97 Miss. 834, 53 So. 415 (1910), in support of his contention regarding the influence of a comment by the judge, which he argues is what the judge did by granting instruction C-10. Price's contention on this point is utterly without merit. The giving of instruction C-10 does not amount to a comment on the evidence by the trial judge. Finding no error, we affirm the lower court's decision on this issue.

B. The Refusal to Submit to the Intoxilyzer Test
¶ 16. Miss.Code Ann. § 63-11-41 (Rev.1996) provides: "If a person under arrest refuses to submit to a chemical test under the provisions of this chapter, evidence of refusal shall be admissible in any criminal action under this chapter." The quoted statute clearly vitiates Price's argument that his refusal to submit to the intoxilyzer test was improperly admitted into evidence against him in violation of his federal and state constitutional rights against self-incrimination. In Ricks v. State, 611 So.2d 212, 215 (Miss.1992), the defendant complained that the breathalyzer test was erroneously admitted into evidence in violation of the Fifth Amendment of the United States Constitution and Art. 3, § 26 of the Mississippi Constitution of 1890. The refusal was admitted under Miss.Code Ann. § 63-11-41 (1972), but the Court noted that the evidence was also admissible under M.R.E. 402, and held as follows:
While this Court has not faced this issue, the U.S. Supreme Court decided almost a decade ago that evidence of a defendant's refusal to take a blood alcohol test may be admitted into evidence against him or her without violating the Fifth Amendment. South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). As this Court has held, § 26 of the Mississippi Constitution in this area provides no broader protection than does the Fifth Amendment, we follow the U.S. Supreme Court's lead. This state's case law has consistently applied the self-incrimination clause of § 26 in the same light as the Fifth Amendment.
The Court further held that:
The State clearly could require the criminal defendant to take a blood test and then introduce the results of that test into evidence against him under this state's case law. It follows that the State could require the defendant take a breathalyzer test and introduce those results against him. The very nature of a drunk driving charge makes it critical for the State to obtain the necessary evidence before that evidence dissipates with time. Therefore, the penalty of introducing the refusal serves an important state interest in encouraging defendants to take the test. And as the refusal
is physical instead of testimonial, its introduction into evidence violates neither the Fifth Amendment nor § 26.
Id. at 216.

C. Comments Made by the Prosecution during Closing Argument
¶ 17. We have carefully examined the excerpts[1] cited by Price in support of *1075 his argument on this point, and the record for the context in which they occurred. Our examination compels us to the conclusion that the State's attorneys were not commenting upon Price's failure to testify but upon Price's refusal to submit to the intoxilyzer test, and were also properly responding to comments made by the defense during closing argument.
¶ 18. Price's claim that comments by the State's attorneys on his refusal to take the breathalyzer test amount to impermissible comments on his failure to testify is without merit. Jones v. State, 669 So.2d 1383, 1390 (Miss.1995):
The Mississippi and the U.S. Constitutions provide that no person may be compelled to take the witness stand *1076 against himself. See Fifth Amendment to the U.S. Constitution; Article III, § 26 of the Mississippi Constitution. In order to protect this right, prosecutors are prohibited from making direct comments on the defendant's failure to testify; they are also precluded from referring to the defendant's failure to testify "by innuendo and insinuation."
Balanced against this [constitutional] interest however, is the rule that attorneys are to be given wide latitude in making their closing arguments. Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis. There is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify by innuendo and insinuation. What constitutes an improper comment on the defendant's failure to testify is to be determined from the facts and circumstances of each case. The question here is whether the comment of the prosecutor can reasonably be construed as a comment upon the failure of [the accused] to take the stand.(citations omitted).
¶ 19. As stated previously, instruction C-10 was properly given, evidence of Price's refusal to take the intoxilyzer test was correctly admitted and the comments that Price claims are indirect and improper comments on his failure to testify were comments only on his refusal to take the breathalyzer test, not upon his failure to testify. We hold that such comments were proper under the circumstances. Finding no error, we overrule this assignment.

III. Testimony Regarding Price's Suspended Driver's License
¶ 20. Price contends that the State "intentionally and self-servedly" used the fact that Price had a suspended license to aid in his conviction. Price claims that the State "blackened him through repeatedly making hay over his suspended license." He alleges that he was represented to the jury as a "lawbreaker" as was his principal witness Ricky Sullivan and was thus denied a fair trial and deserves to have another day in court.
¶ 21. The fact that Price was driving while his license was suspended was an important and essential element comprising the totality of the circumstances surrounding Price's arrest and subsequent trial. He was not charged with the offense; nevertheless, the fact is that he was driving while his license was suspended. When Deputy Stringer was called to testify at the trial, it was incumbent upon him to truthfully relate all of the relevant facts. While Price claims that there were many references to the suspended license to his detriment, this Court found no indication in the record that the fact that Price was driving with a suspended license was mentioned an unusual number of times, nor does Price provide this Court with proof or evidence of same.
¶ 22. One of the authorities cited by Price which he claims supports his position on this issue is actually dispositive of this issue in favor of the State. Eubanks v. State, 419 So.2d 1330, 1331 (Miss.1982) holds that "Mississippi follows the general rule that proof of a crime distinct from that alleged in the indictment should not be admitted in evidence against the accused.... We are mindful that this general rule has many exceptions." One of those exceptions is in the case of an alleged crime that is so connected to the crime charged that they form a single criminal transaction and cannot be separated. Id. at 1332. This assignment is without merit.

IV. The Portable Alcosensor Test
¶ 23. Price argues that it was error for the lower court to allow testimony regarding results of the portable alcosensor breath test results but cites an authority *1077 for the inadmissibility of the Horizontal Gaze Nystagmus test. The case cited was Young v. City of Brookhaven, 693 So.2d 1355 (Miss.1997). We must assume that Price means to analogize the HGN test to the alcosensor test and apply the holding in Young to the alcosensor in the same manner that it was applied to the HGN test. In Young the court held as follows:
We find that the HGN test is a scientific test. The potential of a juror placing undue weight upon testimony about the administration of the test is high. Whereas most other field sobriety tests arise out of a juror's common experiences, i.e., one stumbles, slurs words, and staggers when drunk, the HGN test relies upon a scientifically or at least professionally relevant set of observations.
Therefore, this Court finds that the HGN test is not generally accepted within the scientific community and cannot be used as scientific evidence to prove intoxication or as a mere showing of impairment.
However, the HGN test can still be used to prove probable cause to arrest and administer the intoxilyzer or blood test. This is the only allowable use for the test results.
Id. at 1360-1361 (citations omitted) (emphasis added).
¶ 24. Under this holding, clearly it was proper and within the sound discretion of the trial judge to allow the admission of the test results of the alcosensor for purposes of proving probable cause to arrest and to administer the intoxilyzer. There is no merit to this assignment.

V. The Sufficiency of the Evidence
¶ 25. Price contends that his witnesses explained his allegedly impaired driving and that but for the erroneous admission of the results of the alcosensor test, there was no evidence of probable cause for his arrest. He then reasons that cumulative errors followed the admission of the alcosensor test and that such cumulative errors require a reversal and remand by this Court. Price apparently ignores the testimony of Deputy Springer which testimony clearly provided a legal basis for his arrest even in the absence of the results of the alcosensor test. Deputy Springer observed Price driving off the paved portion of the road for a good distance after Price had failed or refused to dim his lights. Price then wove back to the right side and down the center of the road. Clearly this was reckless driving, and Deputy Springer was warranted in stopping him for reckless driving. Upon learning that Price was driving with a suspended license, Springer had a legal basis to arrest him. It was at that point that Springer asked Price to step out of the truck. When Price complied, Springer smelled alcohol on Price.
¶ 26. In May v. State, 460 So.2d 778, 781-82 (Miss.1984) the Mississippi Supreme Court held:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. [citation omitted] Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
¶ 27. When the applicable standards described above are applied to the evidence in this case it is obvious to this Court that this assignment of error is without merit and that the trial judge acted well within his discretion in denying Price's motion for a new trial. Finding no error, the decision of the lower court is affirmed.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF FELONY DUI, THIRD OR GREATER OFFENSE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $2,000, IS AFFIRMED. ALL *1078 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.
NOTES
[1] The specific excerpts cited by Price in his brief are as follows:

Now, the defense says that theykept talking about hishe didn't have a duty to prove his innocence and he does not have any duty whatsoever; but he did present some witnesses to you, and I'd like to go over those with you.
* * * * * *
We re not asking the defendant to prove his innocence, but we are saying that there is a law, and there's a jury instruction on this pointit's jury Instruction Number C-10 that the laws of the State of Mississippi say that there's implied consent. You have a driver's license and operate your motor vehicle on the streets, public street, of this state; that you're giving your consent to take that test. That's for the good of everyone, so nobody's out there drinking and driving. But the defendant didn't do that, He'd given that consentimplied consent and did not do that. And we think, Why did he not take the test? The alcosensor, the little portable machine Frankie Springer said he gave to him, the first time he didn't get a reading and the second time he did. And he said that reading was what gave him his probable cause to take him in, and he told the defendant what he read. He told him what he went on the portable, so he has some idea what he's going to do on the big machine when he gets downtown, and the decision was made not to take the test.
* * * * * *
But the biggest chance that this defendant took was he decided to take a chance with you. Rather than take the test, see if he was driving under the influence or not, he decided that he would take a chance with a jury and let you decide. And we have what Officer Springer thought we have what Officer Anthony thought about his behavior and the smell of alcohol on him. And we have, through the defendant not taking the test, him taking that chance.
* * * * * *
Fortenberry said, The Court has instructed you and Mr. Brown commented on it, and I'll say it again; we cannot speculateyou cannot speculate on why the defendant has not testified. He has a constitutional right not to do that, and we can draw no inference from it. But that does not mean that you cannot speculate on why he did not take the test on September the 20th.
* * * * * *
But the question is and the speculation is, Why did Mr. Price not take the test? Now, Mr. Brown first used this termif you'll remember, it was Mr. Brown that first used the term expect the defendant to prove his innocence. The instructions tell you it's our job to prove his guilt. It's not his job to prove his innocence. But Mr. Brown asked Gail Anthony yesterdaysaid, You mean you gave him two chances to prove his innocence? And she said, Yes. And that is exactly what it was.
* * * * * *
Officer Cunningham tested that machine the day before, and it worked; but that's irrelevant because he didn't take the test anyway. The point is, it was there for him to take it. It was in good working order. And we had a lady, Deputy Sheriff Gail Anthony, who was certified to give it to him, and he refused twice. To use Mr. Brown's terms, if he was innocent, that would have proven his innocence. He knew what his reading was out in the field. You can draw inferences from that. You don't have to speculate on it.
* * * * * *
And then he slept for eight hours or was passed out. They don't know. The witnesses said, We don't know.
* * * * * *
Now, Mr. Brown said, Well, they didn't even take statements from him. You can't force a man to give a statement when he's arrested. You can ask him if he wants to give one. Whether they asked him or not we don't know. If they asked him, I would submit to you he wouldn't have given it because he wouldn't take the test, and that was the best statement he could give. Everything else is words. What was on that paper wasn't going to determine whether he was driving under the influence or not. What was in his system and would have blown out and registered through that machine would have been the determination, and he didn't give that statement. He turned that one down twice. I submit to you the statements are irrelevant.
* * * * * *
[W]e had an accurate machine. We had somebody certified to administer the test. Everything was in order, but the defendant's consent. And you have an instruction that tells you under the law of this state, when you get in a car and drive on the public roads, you have by law given your implied consent to take that test on the Intoxilyzer 5000. His consent was the only ingredient missing.