798 So.2d 579 (2001)
Steven RAY a/k/a Steven J. Ray, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00011-COA.
Court of Appeals of Mississippi.
May 15, 2001.
Rehearing Denied July 31, 2001.
Certiorari Denied October 11, 2001.
*580 Dan W. Duggan Jr., Brandon, Attorney for Appellant.
Office of the Attorney General by Michael C. Moore, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arises from the Hinds County Circuit Court. Ray was convicted and sentenced to six years in the custody of the Mississippi Department of Corrections for the crime of possession of methamphetamine. Feeling aggrieved, Ray has effectuated this appeal, raising the following issues for our review: (1) whether the State failed in its proof of probable cause for the initial stop of appellant's vehicle and (2) whether the scope of the search of appellant's vehicle incident to his arrest was improper.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. On July 16, 1997, two officers from the Jackson Police Department were on patrol when they pulled behind Ray's car. The officers reported that Ray was speeding *581 in excess of fifty miles per hour in a thirty mile per hour zone. They also testified that they observed Ray swerve off the right side of the road and back onto the road. After this observation, the officers decided to stop Ray. As they approached the vehicle, Officer McGehee went to the driver's side, and Officer Bryant went to the passenger's side. Officer Bryant testified that he noticed Ray "making a lot of furtive movements. He was reaching above the visor. He was reaching around beside him." Officer Bryant then notified his partner to "watch out because the driver was moving around more than what you normally see people do on a traffic stop." When Officer McGehee asked Ray for his driver's license, Ray told the officer it had been taken by a "cop." At this time, Officer Bryant looked into the car with his flashlight and saw a plastic vial lying on the passenger seat. Then Officer McGehee ran a warrants check on Ray and found that he had an outstanding warrant for false pretense. Officer McGehee testified that he observed Ray at this time "reach up with his left hand as though he was either taking something from the window trim, the door area, where the window meets the ceiling, either putting something there or taking something down."
¶ 4. Officer McGehee returned to the car and asked Ray to step out. At this point, Officer Bryant noticed a syringe under the visor on the driver's side. The officers arrested Ray and conducted a pat down. They found a small bag containing a yellowish powder substance in Ray's cap. The officers then conducted an "inventory" search of the vehicle and found two .38 revolvers in the glove box, a pager, a police scanner, and a Coke bottle with a milky substance inside. The crime lab later determined that the yellowish powder substance in the bag was methamphetamine and that the syringe and vial also contained methamphetamine.

DISCUSSION OF THE ISSUES

1. Justification for the Stop
¶ 5. Prior to the trial, defense counsel filed a motion to suppress all the evidence recovered on the grounds that the officers did not have probable cause to seize and search Ray's vehicle. After a hearing, the motion was denied. Ray contends that the trial court was in error because the State did not present sufficient evidence to support a finding of probable cause for the stop. Ray points this court to McCray v. State, 486 So.2d 1247 (Miss.1986), which sets forth the standard the State must meet to support a vehicular stop. The McCray court opined that evidentiary support for an investigatory stop requires that a law enforcement officer articulate specific facts to support a reasonable suspicion that the officer had a particularized and objective basis for suspecting criminal activity on the part of the particular person subject to the stop. Id. at 1249; see also Ellis v. State, 667 So.2d 599, 608 (Miss.1995) (citing Terry v. Ohio, 392 U.S. 1, 21-2, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The courts have not articulated a concrete rule for determining what circumstances justify an investigatory stop; instead, each case is to be reviewed on a case by case analysis in light of the totality of the circumstances. See Green v. State, 348 So.2d 428, 429 (Miss.1977); see also Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
¶ 6. In the case sub judice, Ray argues that the State did not present any physical evidence to support the reason for the stop. Despite Ray being issued a citation for speeding and reckless driving, the State did not produce such documents during its case in chief or anytime thereafter. The State merely relied on the testimony of the officers that they observed Ray *582 speeding and driving recklessly. Hence, Ray argues that the State did not present substantial credible evidence to support the trial court's finding, and thus, did not meet the standard for suppression hearing findings. We disagree.
¶ 7. While the citation would have definitely added to the persuasiveness of the officers' testimony and could have easily been produced, the courts have never held that to be a requirement. The standard merely requires the officer(s) to articulate particularized facts which support an objective belief that the subject has already participated in or is in the process of participating in criminal activity. McCray, 486 So.2d at 1249. Here, two separate officers testified that Ray was driving in excess of the posted speed limit and that they had observed him swerve off the side of the road. It is our opinion that the officers' testimony, as presented, met the threshold of particularized facts required to support a reasonable suspicion justifying the initial stop.
¶ 8. Further, pursuant to Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the U.S. Supreme has opined that the decision to stop an automobile is reasonable where the police have actual probable cause to believe that a traffic violation has occurred. Here, the officers testified that they observed Ray driving his vehicle in excess of the posted speed limit, an undisputed traffic violation. Therefore, the officers actually had more than the required reasonable suspicion. They had probable cause to support the stop.

2. The Search of Ray's Vehicle
¶ 9. After the officers stopped Ray, they became aware that Ray had an outstanding warrant for a charge of false pretense. Once Ray was arrested, the officers began a search of his person and his vehicle. As stated, during the search of the vehicle, the officers discovered several incriminating items. Ray argues that once the officers became aware of the outstanding warrant, he was under arrest at that moment. He was removed from the vehicle and handcuffed "right at his door" and taken to the rear of the car. It was at that time that the officers began the search of the vehicle. Ray asserts that the search of the car was at most a search incident to arrest and that it exceeded the scope for such search. The State on the other hand contends that the search of the car was an inventory search and that Ray is procedurally barred from raising the issue as to the scope of the search. We first address the matter of the procedural bar as it relates to the scope of the search.
¶ 10. Since we are not a court of original jurisdiction, we can only review questions that have been first raised and decided upon by the trial court. See Leverett v. State, 197 So.2d 889, 890 (Miss. 1967); Collins v. State, 173 Miss. 179, 159 So. 865 (1935). Ray, at the trial level, filed a motion to suppress the evidence discovered on his person as well as in his vehicle. The motion was premised on a claim of lack of probable cause for the initial stop and did not argue alternatively that, assuming the existence of probable cause for the stop, the search was still illegal because it exceeded permissible limits for a search incident to arrest. However, the fact that the motion did not make the alternative argument is of no moment because the motion as written covered all of the contraband that was discovered in the search of the car as well as on Ray's person. Consequently, on these facts, we find no basis on which to impose a procedural bar regarding the scope of the search. We now turn to the merits of the issue.
*583 ¶ 11. Searches conducted outside the judicial process, or without the issuance of a warrant by a neutral and detached magistrate or judge, have long since been seen as per se unreasonable and in violation of the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Two such exceptions are (1) a search incident to a lawful arrest and (2) a properly conducted inventory of a vehicle.
¶ 12. In this case, the classification of the search is important because the permissible scope of a search incident to arrest is more limited than the scope of an inventory search. A search incident to arrest is founded on the principle that the subject may have a weapon on his person or within reach, or that he may attempt to destroy evidence which is within his grasp. White v. State, 735 So.2d 221, 224 (Miss. 1999); see also Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). The Cupp court also declared that the scope of the warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement. Cupp, 412 U.S. at 295, 93 S.Ct. 2000. In other words the scope of a search incident to arrest must be limited to a reasonable area equal to that which is within the arrestee's reach where he may have access to a weapon or may have attempted to destroy or discard evidence. We now turn our attention to a discussion of an inventory search.
¶ 13. When an individual is arrested and there is no one readily available to take possession of the arrestee's vehicle, the arresting officer will often have the car impounded. The courts have created the inventory exception for three basic reasons: (1) the protection of the arrestee's property while in police custody, (2) the protection of the police against claims or disputes over lost or stolen property and (3) the protection of the police from potential danger. South Dakota v. Opperman, 428 U.S. 364, 371, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). To ensure that the inventory search remains within the scope necessary to carry out the care-taking function of protecting the arrestee's vehicle, the officers must follow the standard departmental procedure set for inventory and impounding. Id. at 373, 96 S.Ct. 3092.
¶ 14. The crux of the issue before us is whether the search was in fact a search incident to arrest or an inventory search. As stated, Ray argues that he was handcuffed "right at his door" and taken to the back of his car. Thus, the argument follows that, because Ray was handcuffed and behind the car, the interior of the car was not within his reach; therefore, the search of the interior of the car was unreasonable.
¶ 15. The State counters Ray's argument with the assertion that following Ray's arrest, the officers properly conducted a pat down search of his person and that the pat down constituted a search incident to arrest. However, upon preparing to transport Ray to the police department, the officers then proceeded to conduct an inventory search of the vehicle as a part of the standard procedure of the Jackson Police Department.
¶ 16. It is our view that the search of the interior of Ray's car was a properly conducted inventory search. Because of the proximity of the search to the time of the arrest, it may appear that the search should be characterized as a search incident to arrest. However, the record is clear that the officers made a decision to arrest Ray and transport him to the police department. There was no one readily available to remove the vehicle from the roadside. The officers then followed *584 standard departmental procedure and impounded the vehicle. Prior to the impoundment, the officers conducted a proper inventory search to protect Ray's property within the vehicle from the threat of loss or damage, as well as to protect themselves from potential danger. Therefore, we hold that the trial judge did not err in denying Ray's motion to suppress evidence discovered as a result of the search.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE TO A TERM OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR.