918 So.2d 846 (2005)
Robert GARRISON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00318-COA.
Court of Appeals of Mississippi.
September 27, 2005.
Rehearing Denied January 17, 2006.
*847 David O. Bell, Oxford, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before BRIDGES, P.J., GRIFFIS and BARNES, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Elliot Lumber Company is located in Lafayette County, Mississippi. On June 4, 2001, someone broke into Elliot Lumber's building and then broke into the company safe. On June 7, 2001, a narcotics officer contacted the Lafayette County Sheriff's Office (LCSO) and spoke with Deputy Terry Prestige regarding Deputy Prestige's investigation of the Elliot Lumber Company safe burglary. According to the narcotics agent, he had a lead on the Elliot Lumber Company safe burglary through Virginia Garrison. Virginia indicated that her ex-husband, Robert Garrison, broke into Elliot Lumber Company and then broke into the safe. Virginia also linked Garrison to a liquor store burglary in Holly Springs, Mississippi. She claimed Garrison stole a derringer pistol from the liquor store.
¶ 2. Deputy Prestige contacted the Holly Springs Police Department. The Holly Springs Police Department verified the liquor store burglary and confirmed Virginia's claim of the stolen derringer. The Holly Springs Police Department provided Deputy Prestige with the derringer's serial number. Still, authorities could not find Garrison.
¶ 3. On June 13, 2001 two women contacted the LCSO and reported a confrontation between Robert Garrison and Virginia. According to their report, Garrison was shooting a derringer behind Virginia's trailer. Deputy Prestige proceeded towards Virginia's property. On his way, he passed a convenience store and noticed Garrison in the parking lot. Deputy Prestige turned around and headed back to the store. On his way back, Deputy Prestige met Garrison, driving a truck in the opposite direction. Deputy Prestige turned around again, caught up with Garrison and stopped him. Deputy Prestige knew that Garrison had a suspended driver's license. When Deputy Prestige asked Garrison for his driver's license, Garrison presented a driver's license under someone else's name. That is, Garrison tried to pass himself off as someone else. However, Garrison later admitted his true identity. Deputy Prestige arrested Garrison for driving with a suspended license.
¶ 4. Another deputy drove Garrison to the jail. Meanwhile, Deputy Prestige called a wrecker to tow Garrison's truck. While he was waiting, Deputy Prestige searched the cab of Garrison's truck and found a derringer in Garrison's glove compartment. The derringer's serial number matched the serial number corresponding to the derringer stolen during the Holly Springs liquor store burglary. Deputy Prestige had Garrison's truck towed to the impound lot, where he performed a more thorough search of the truck.
¶ 5. On December 14, 2001, the Lafayette County Grand Jury returned an indictment and charged Garrison with four counts: (1) felon in possession of a firearm; *848 (2) knowing possession of a stolen firearm; (3) possession of larceny tools; and (4) burglary. Additionally, the grand jury indicted Garrison as a habitual offender. Garrison filed a motion for severance and requested that counts one and two be tried separately from counts three and four. The circuit court granted Garrison's motion for severance.
¶ 6. Garrison also filed a motion to suppress the evidence seized pursuant to the stop and search of Garrison's truck. Following a hearing on the matter, the circuit court overruled Garrison's motion to suppress.
¶ 7. The jury found Garrison guilty of possession of a firearm by a felon and knowing possession of a stolen firearm. Additionally, the circuit court found that Garrison qualified as a habitual offender. Accordingly, the circuit court sentenced Garrison to a term of eight years total in the custody of the Mississippi Department of Corrections.
¶ 8. Posttrial, Garrison filed a motion for judgment notwithstanding the verdict and a motion for new trial. In each motion, Garrison claimed the circuit court erred when it overruled his motion to suppress the evidence obtained during the search of his truck. The circuit court overruled Garrison's posttrial motions. Aggrieved, Garrison appeals and raises the following issue:

I. DID THE CIRCUIT COURT ERR IN REFUSING TO SUPPRESS EVIDENCE COLLECTED FROM GARRISON's TRUCK IN VIOLATION OF HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES?
Finding no error, we affirm.

STANDARD OF REVIEW
¶ 9. Garrison appeals the circuit court's decision to deny his motion for judgment notwithstanding the verdict and his motion for a new trial. However, Garrison claims the circuit court erred when it overruled his motion to suppress. That is, Garrison claims that the circuit court erred by refusing to suppress the evidence obtained from Deputy Prestige's search.
¶ 10. In reviewing the denial of a motion to suppress, this Court looks to determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence. Price v. State, 752 So.2d 1070(¶ 9) (Miss.Ct.App.1999). Where supported by substantial credible evidence, this Court will not disturb those findings. Id.

ANALYSIS
¶ 11. Garrison argues that Deputy Prestige conducted an unreasonable search of his truck. Garrison's argument rests on the proposition that Deputy Prestige did not conduct his search incident to arrest pursuant to a standardized policy. According to Garrison, Deputy Prestige's search was a pretext for some type of evidentiary fishing expedition. Consequently, Garrison concludes that the search was unconstitutional and the circuit court should have determined that the evidence seized as a result of that search was inadmissible at trial.
¶ 12. "The warrantless search and seizure of personal property by law enforcement officers is prohibited by the Fourth Amendment to the United States Constitution, and Art. 3, Section 23 of the Mississippi Constitution of 1890." Evans v. State, 823 So.2d 617 (¶ 14) (Miss.Ct.App. 2002). However, warrantless searches are permissible under a "few specifically established and well-delineated exceptions." *849 Ray v. State, 798 So.2d 579(¶ 11) (Miss.Ct. App.2001) (citing Katz v. United States, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such exception is an inventory search of a vehicle. Id.
¶ 13. "When an individual is arrested and there is no one readily available to take possession of the arrestee's vehicle, the arresting officer will often have the car impounded." Ray, 798 So.2d at (¶ 13). The inventory exception exists for three basic reasons: "(1) the protection of the arrestee's property while in police custody, (2) the protection of the police against claims or disputes over lost or stolen property and (3) the protection of the police from potential danger." Id. (Citing South Dakota v. Opperman, 428 U.S. 364, 371, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)) "To ensure that the inventory search remains within the scope necessary to carry out the care-taking function of protecting the arrestee's vehicle, the officers must follow the standard departmental procedure set for inventory and impounding." Id, 798 So.2d at (¶ 13), 428 U.S. at 373, 96 S.Ct. 3092.
¶ 14. Thus, Garrison is correct when he asserts that an inventory search incident to arrest must be conducted pursuant to a standardized procedure. Still, resolution of this issue depends on whether or not the Lafayette County Sheriff's Office searched his truck pursuant to such a standardized procedure. Garrison claims that they did not. Naturally, the State disagrees.
¶ 15. This Court addressed a similar issue is Ray, 798 So.2d 579. In Ray, authorities arrested a defendant. Id. at (¶ 15). While waiting to transport that defendant to the jail, authorities performed an inventory search of the defendant's car "as part of the standard procedure of the Jackson Police Department." Id. This Court found that "the search of the interior of [the defendant's] car was a properly conducted inventory search." Id. at (¶ 16). This Court reasoned that the search was a proper inventory search because:
[t]here was no one readily available to remove the vehicle from the roadside. The officers then followed standard departmental procedure and impounded the vehicle. Prior to the impoundment, the officers conducted a proper inventory search to protect Ray's property within the vehicle from the threat of loss or damage, as well as to protect themselves from potential danger. Therefore, we hold that the trial judge did not err in denying Ray's motion to suppress evidence discovered as a result of the search.
Id.
¶ 16. During the hearing on Garrison's motion to suppress, Deputy Prestige testified "[w]hen we make a stop out on the street if there is only one person there unless there is someone there at that time that he take possession of the truck or of the vehicle we don't usually [allow a person taken into custody to secure a vehicle by means other than impounding]. We usually call a wrecker." Later, the following exchange took place:
THE STATE: Terry, you said y'all had a procedure that you followed when you impound a vehicle. What is that?
PRESTIGE: We don't have a written procedure, if that is what you are asking but on most occasions we call a wrecker. Unless there is some one there at the time that the person can release the vehicle to. They will release it at that time but most of the time we call a wrecker. It is so much easier.
THE STATE: Based on your investigation in this case had you felt like you *850 had probable cause to hold the vehicle at that time any way, did you not?
PRESTIGE: Yes, sir, and we were having it towed to our county barn and that is one reason I took pictures of everything to come out missing or several days later to some one to say that there was something in there that wasn't in there.
¶ 17. As in Ray, Deputy Prestige testified that there was no one available to remove Garrison's vehicle from the roadside. Further, Deputy Prestige testified that, under such circumstances, the LCSO's standard procedure was to call a wrecker to impound the vehicle. Just as in Ray, Deputy Prestige performed an inventory search prior to impoundment. Accordingly, Deputy Prestige's search was a valid inventory search. We affirm the circuit court's decision to overrule Garrison's motion to suppress.
¶ 18. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I FELON IN POSSESSION OF FIREARM, AND SENTENCE OF FIVE YEARS, AND COUNT II FELON IN POSSESSION OF A STOLEN FIREARM AND SENTENCE OF THREE YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE, WITH COUNTS I AND II TO RUN CONSECUTIVELY TO EACH OTHER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.