966 So.2d 863 (2007)
Terry HAMPTON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CA-01211-COA.
Court of Appeals of Mississippi.
October 2, 2007.
*864 Edmund J. Phillips, Jr., attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On July 14, 2006, Terry Hampton was convicted in the Circuit Court of Neshoba County for possession of cocaine and sentenced to serve a term of four years in the custody of the Mississippi Department of Corrections and pay a fine of $1,500. Hampton filed a motion for a new trial, which the court denied. Aggrieved by the court's decision, he appeals asserting the following issues for this Court's review: (1) the court erred in denying Hampton's motion to suppress the results of the search of his pocket at the roadblock checkpoint, and (2) the court erred in sustaining the State's objection to cross-examination of a law enforcement officer about the published checkpoint policies and procedures of the Neshoba County Sheriff's Department. Finding no error, we affirm.

FACTS
¶ 2. Hampton was indicted by a Neshoba County grand jury on May 2, 2005, for possession of "a schedule II controlled substance, namely cocaine, in an amount of more than .10 grams but less than 2 grams." A trial was held on July 12, 2006, in the Circuit Court of Neshoba County before Judge Marcus D. Gordon.
¶ 3. On November 29, 2004, the Neshoba County Sheriff's Department established a driver's license checkpoint at the intersection of Road 147 and County Road 604, during the daytime hours. Hampton stopped at the checkpoint and was asked for his driver's license by Deputy Sheriff Herbert Johnson, to which he told Deputy Johnson he did not have a license. In testimony outside the presence of the jury,[1] Deputy Johnson identified Hampton as the driver of the black Chrysler automobile that he encountered at the checkpoint. Johnson testified that he was outside the automobile, standing above Hampton as he sat in the driver's seat, and that he observed an open twelve ounce beer bottle and what he thought to be a *865 marijuana cigarette in Hampton's left shirt pocket, as well as what he believed to be crack cocaine. He also observed that Hampton's eyes were very red and that there was a strong smell of alcohol coming from the vehicle. Johnson testified that when questioned about whether he had been drinking, Hampton admitted that he had drunk three beers at the casino and was drinking the one that was open in the vehicle.
¶ 4. After verifying Hampton's Social Security card that he presented to Deputy Johnson, Johnson asked Hampton to exit the vehicle and he was then placed under arrest for a possible DUI. Following the arrest, Johnson conducted a search of Hampton at which time he observed "one marijuana cigarette and two off-white rock substances which appeared to be crack cocaine" in Hampton's left shirt pocket. Johnson called Narcotics Officer Richard Sistrunk to come assist with the removal of the items found in Hampton's shirt pocket.
¶ 5. Sistrunk testified that after being called over to Hampton by Deputy Johnson, he observed "two off-white rock-like substances" in Hampton's shirt pocket, as well as a "green leafy-type substance." Sistrunk removed the items and placed them into an evidence bag, with Johnson's assistance, and then sealed the bag. The bag was then sent to the crime lab for testing and analyzation of the substances.
¶ 6. Grady Downey, the forensic scientist expert, who analyzed the substances testified that the off-white, rock-like substance was identified as "cocaine base with a weight of 0.38 gram." Downey explained that cocaine base was the term used for cocaine, which was most commonly known as crack on the streets.
¶ 7. After the State rested its case-in-chief, Hampton, after being informed of his rights, chose not to testify and did not call any other witnesses for his defense. Therefore, after Hampton rested, he motioned for a directed verdict which was overruled. The court gave the jury instructions, closing arguments were made, and the jury retired to deliberate. The jury returned a verdict of guilty for the charge of possession of cocaine. On July 14, 2006, the court sentenced Hampton to a term of four years in the custody of the Mississippi Department of Corrections and ordered him to pay a fine of $1,500. After sentencing, Hampton made a motion for a new trial or other relief asserting the verdict was against the overwhelming weight of the evidence presented, which the court overruled. Aggrieved, Hampton appeals.

STANDARD OF REVIEW
¶ 8. A motion for a new trial challenges the weight of the evidence. Beckum v. State, 917 So.2d 808, 812 (¶ 10) (Miss.Ct.App.2005) (citing Carr v. State, 774 So.2d 469, 472 (¶ 15) (Miss.Ct.App. 2000)). Upon review of a trial court's denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to upholding the verdict. Id. at 813 (¶ 14). We will only reverse a trial court's decision when convinced that there was an abuse of discretion in failing to grant a new trial. Dudley v. State, 719 So.2d 180, 182 (¶ 7) (Miss.1998) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)).

ISSUES AND ANALYSIS
(1.) The court erred in denying Hampton's motion to suppress the results of the search of his pocket at the roadblock checkpoint.
¶ 9. In Garrison v. State, 918 So.2d 846, 848(¶ 10) (Miss.Ct.App.2005), when reviewing the denial of a motion to suppress, this Court looks to determine *866 whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence. Id. (citing Price v. State, 752 So.2d 1070, 1073 (¶ 9) (Miss.Ct.App.1999)). Where supported by substantial credible evidence, this Court will not disturb those findings. Price, 752 So.2d at 1073 (¶ 9). The standard of review for evidentiary matters has been stated by our supreme court as follows:
"The relevancy and admissibility of evidence are left, in large part, to the discretion of the trial court. However, this discretion must be exercised within the confines of the Mississippi Rules of Evidence. Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected." Mitchell v. State, 792 So.2d 192, 217(95) (Miss.2001) (citing Johnston v. State, 567 So.2d 237, 238 (Miss.1990)).
¶ 10. The Supreme Court established a balancing requirement for law enforcement's stops and the limited detention involved with checkpoints versus roving patrol stops in Camara v. Municipal Court of San Francisco, 387 U.S. 523, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Additionally, the court held in United States v. Martinez-Fuerte, 428 U.S. 543, 558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), that fixed checkpoints by law enforcement generate considerably less concern or fright by lawful travelers due to their subjective intrusion; therefore, the court will review such procedures under a different light than that of roving patrol stops. Johnston v. State, 853 So.2d 144, 145-46(¶ 4) (Miss. Ct.App.2003) (citing Martinez-Fuerte, 428 U.S. at 558, 96 S.Ct. 3074). Therefore, we must apply the three requirements established by the Camara court to find a checkpoint by law enforcement valid. The requirements are as follows: (1) existence of a strong public interest in maximizing success in combating the problem at hand, (2) an inability to achieve adequate results by relying on probable cause determinations, and (3) the "relatively limited invasion of the citizen's privacy" involved in the procedure in question. Johnston, 853 So.2d at 146(¶ 4) (citing Camara, 387 U.S. at 537, 87 S.Ct. 1727). The Johnston court states that in applying the Camara standards "that required stops in these situations for the purpose of checking valid driver's license would be reasonable" for purposes of the Fourth Amendment. Johnston, 853 So.2d at 146(¶ 4); Edwards v. State, 795 So.2d 554, 557-58(¶ 12) (Miss. Ct.App.2001).
¶ 11. Hampton submits that the checkpoint conducted by the Neshoba County Sheriff's Department on November 29, 2004, was unreasonable because its purpose was "general law enforcement and was not precisely specified." Hampton asserts that because the evidence obtained from the unreasonable search was inadmissible, specifically the 0.38 grams of cocaine, the verdict does not support the evidence. We disagree.
¶ 12. Deputy Sheriff Johnson testified that the purpose of the checkpoint on the afternoon of November 29, 2004, was to check for driver's license. Narcotics Officer Sistrunk also testified that the purpose of the checkpoint was "checking driver's license, insurance, and tags." Additionally, both officers testified that the checkpoint was approved by Chief Deputy Wyatt Wadell; though there was conflicting testimony as to the location and time that approval was obtained, the trial court did not find that critical and neither do we.
¶ 13. The facts of the present case are similar to those in Dixon v. State, 828 So.2d 844, 845(¶ 3) (Miss.Ct.App.2002), where Dixon was stopped at a checkpoint in Greene County and arrested for possible DUI. Id. Dixon argued the checkpoint was unreasonable and in violation of his Fourth Amendment rights; therefore, the *867 results of the Intoxilyzer should have been suppressed from the evidence at trial. Id. The purpose of the checkpoint was to check for valid tags, inspection stickers, license, and traffic violations. Id. Additionally, all vehicles were required to stop at the checkpoint, although no log was maintained of the activity or duration of the checkpoint, as was the case with the Neshoba County checkpoint in the present matter. Id. This Court found the checkpoint to be reasonable and that there had been no violation of Dixon's constitutional rights. Dixon, 828 So.2d at 846 (¶¶ 8-9). Following the Court's previous holding in Briggs v. State, 741 So.2d 986, 989 (¶ 8) (Miss.Ct.App.1999), that the State does arguably have an interest in seeing that drivers of vehicles are properly registered and in making sure vehicles are properly registered and inspected, we found that Dixon had not shown that the checkpoint was conducted in any unreasonable manner or was overly intrusive. Dixon, 828 So.2d at 846 (¶ 9) (citing Briggs, 741 So.2d at 989 (¶ 8)).
¶ 14. Two Neshoba County Sheriff's Department officers testified that the purpose of the roadblock was to check for valid driver's licenses and we find, as we did in Briggs and Dixon, that the checkpoint was reasonable and had a valid purpose. Additionally, we find that substantial credible evidence exists to support the trial court's admission of the cocaine into evidence, and we will not disturb its findings. Accordingly, this issue is without merit.
(2.) The court erred in sustaining the State's objection to cross-examination of a law enforcement officer about the published checkpoint policies and procedures of the Neshoba County Sheriff's Department.
¶ 15. We review the trial judge's limiting of cross-examination under an abuse of discretion standard. Jefferson v. State, 818 So.2d 1099, 1109 (¶ 24) (Miss. 2002) (citing McDowell v. State, 807 So.2d 413, 422 (¶ 24) (Miss.2001)). While the scope of cross-examination is ordinarily broad, it is within the sound discretion of the trial court, and the trial court possesses the inherent power to limit cross-examination to relevant factual issues. Smith v. State, 733 So.2d 793, 801(¶ 37) (Miss.1999) (citing Pace v. State, 473 So.2d 167, 169 (Miss.1985)); Dozier v. State, 257 So.2d 857, 858 (Miss.1972).
¶ 16. Hampton argues the trial judge erred when he sustained the State's objection to his questioning on cross-examination of Deputy Johnson regarding the document marked "Defendant's Exhibit 1," which was submitted as an exhibit to Hampton's motion to suppress. The motion to suppress challenged the constitutionality of the checkpoint. The basis of the State's objection was that the document, characterized as a policies and procedures manual, was admitted for identification in the suppression hearing only and outside the presence of the jury. The court sustained the State's objection, ruling that the document was an "exhibit to the motion that you [Collins] made out of the presence of the jury, which then calls for a legal opinion as to the foundation of your [Collins] motion. It's not then a matter of issue for the jury to decide. . . ." Furthermore, the court stated the document "called for the court's ruling as to the validity of the circumstances. . . ." We agree with the court's ruling to sustain the State's objection to the line of questions regarding the Neshoba County Sheriff's Department's policy and procedure to establish a valid checkpoint. Hampton submits that the checkpoint was unreasonable, which is a constitutional challenge for the trial judge; therefore, his line of questioning *868 regarding the document was irrelevant to the factual issue before the jury, that being the charge of possession of cocaine. The trial judge had already ruled on the motion to suppress and found that the evidence should not be suppressed because the search stemmed from a valid checkpoint set up by the Neshoba County Sheriff's Department. Therefore, we find the court did not abuse it's discretion by sustaining the State's objection to limit cross-examination of Deputy Johnson. Accordingly, this issue is without merit.
¶ 17. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $1,500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
KING, C.J., LEE and MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] At the start of Deputy Johnson's testimony, Hampton made a motion to suppress. The jury was excused and the State called two witnesses, Deputy Johnson and Officer Richard Sistrunk. Chris Collins, Hampton's counsel, then made an oral motion to suppress the evidence seized at the checkpoint, submitting to the court that the proper policies and procedures were not followed in establishing the checkpoint; therefore, the evidence seized at the checkpoint should be suppressed. Collins's contention rested on the United States Supreme Court case, City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). The court overruled the motion to suppress.