THORNTON GREEN v. STATE OF MISSISSIPPI.

[53 South. 415.]

CRIMINAL LAW AND PROCEDURE. *Murder. Jury. Improper influence by judge. Conclusive presumption.*

The court will not inquire whether the jury was actually influenced by improper conduct of the judge; but if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity, and testimony will not be heard to rebut such presumption.

FROM the circuit court of Adams county.

HON. MOYSE H. WILKINSON, Judge.

Green, appellant, was indicted and tried for the murder of Mary Green, was convicted, sentenced to be hanged and ap-

pealed to the supreme court. ANDERSON, J., stated the facts thus:

The appellant was tried before a jury composed of eight of the regular venire for the week and four talesmen. While the jury was being made up, anticipating that the regular venire would be exhausted, the judge left the bench, and went into the sheriff's office, and instructed Deputy Sheriff Ryan to summon young men for talesmen, and stated to him: "We want to break this nigger's neck." The deputy, summoned five talesmen, all of them young men, except one, who was between fifty and sixty years of age. Thereupon appellant's attorney made a motion to discharge them, on the ground of the instructions given the deputy by the judge, above set out. On this motion the testimony of several witnesses was taken, during the taking of which and the hearing of the motion one of the talesmen, Lawrence, was present and heard the proceedings. The judge admitted in Lawrence's presence that he had instructed the deputy to summon young men who would break the negro's neck, but stated that he was joking, and he did not mean it. Lawrence's testimony to this effect was given on the motion for a new trial without objection on the part of the state. On cross-examination he stated, over the objection of appellant, that he was not influenced in his verdict by what he heard. Appellant had exhausted his peremptory challenges before reaching the juror, Lawrence, who was one of the jury convicting him.

*E. R. Ratcliff, Jr., Dorsey & Allen* and *Charles F. Engle,* for appellant.

In *Allen v. State,* 100 Iowa, 7, the following language is used: "It must be remembered that jurors watch courts closely and place great reliance on what the trial judge says and does. They are quick to perceive the leaning of the court and from his conduct, whether properly or not they will almost invariably arrive at a conclusion as to what the court thinks about a case.

Every remark dropped by the court, every act done by him during the trial of a case is the subject of comment and conclusion by the jurymen. Hence it is that judges presiding at trials should be exceedingly discreet in what they say and do in the presence of a jury lest they seem to lean towards or lend their influence toward one side or another." See *Lamar v. State,* 64 Miss. 687; *Wheeler v. Wallace,* 53 Mich. 355; *State v. Washington,* 30 La. Ann. 49; *Parks v. State,* 59 Ga. 879; *Kane v. Kinnare,* 69 Ill. App. 81. In *Shakman v. Potter,* 98 Iowa, 66, it was held that where a judge during the progress of a trial made remarks that would be erroneous and prejudicial if embodied in his formal charge, a losing party will be entitled to have a verdict to which they might have contributed set aside. In 21 Enc. P. & P. 994, it is said: "Judgments are often reversed merely because of unfavorable comments of the trial judge, the court taking the view that it is impossible to determine to what extent the rights of a party may have been prejudiced by the remarks of the court"

The judge presiding at a jury trial, in his remarks and conduct of the case, should endeavor to maintain a strict impartiality. It is error for him to express directly or indirectly an opinion which points to the guilt of the accused. 12 Cyc. 538; *People v. Daily,* 135 Cal. 104; *Cunningham v. People,* 195 Ill. 550; *Fisher v. People,* 23 Ill. 283; *Scruggs v. State,* 90 Tenn. 81; *Hawkins v. United States,* 116 Fed. 569; *People v. Moyer,* 77 Mich. 571; *People v. Leach,* 146 N. Y. 392.

*James R. McDowell,* assistant attorney-general, for appellee.

This court has held in the *Schrader case,* 84 Miss. 593, and in the *Green case,* 72 Miss. 522, that in the face of a positively sworn declaration of a juror on his voir dire that he would give the defendant a fair trial, although he had heard the case discussed and had some opinion, his verdict would not be set aside. The case here presented is no stronger than those cases.

It is true that where there was opportunity for an improper influence to have been brought to bear, the presumption is against the purity of the verdict, but the verdict will not be set aside because of this presumption if it appears by opposing evidence that such influence failed to have any effect on the jury. *Pope v. State,* 36 Miss. 121.

In the instant case, there was no improper influence attempted to be brought upon the jury and no opportunity for such influence; and in the second place, the positive testimony of the juror, Lawrence, who is the only one that heard the remarks, sets at rest all doubt the courts might entertain as to his competency.

Our court recently held in the case of *Whitehead v. State, ante,* 537, 52 South. 259, that where members of the regular venire heard part of the evidence on the trial of one charged jointly with the defendant, that they will not thereby be disqualified from sitting on the jury when the defendant is on trial for the same offense.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

Has the appellant had a trial by an impartial jury, guaranteed to him by the twenty-sixth section of the constitution? In *Lamar v. State,* 64 Miss. 687, 2 South. 12, Judge Campbell, delivering the opinion of the court, used this language: "The legal theory of a trial by jury is the selection of an impartial body from the county, and its trial of the case free from any influence except that produced by the testimony and law and legitimate argument, and any subjection of the jury to any other influence is carefully guarded against. Twelve men must concur in preferring a charge of felony before one can be held to answer, and twelve men elected, impaneled, and sworn to try the issue joined must concur in a verdict of guilty before the humblest can by our law be deprived of his liberty; and such is the jealousy with which trial by jury is guarded that, when it is made to appear

that anything has occurred which may have improperly influenced the action of the jury, the accused will be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law, and every one is to be judged by the law."

It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party. 21 Ency. P. & P. 994, 995, and notes. The court will not stop to inquire whether the jury were actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.

The record in this case acquits the judge of intentional wrong; but, notwithstanding, what occurred was calculated to influence the jury against the appellant.

*Reversed and remanded.*