287 So.2d 766 (1974)
Charlie Edward SHORE, Jr.
v.
STATE of Mississippi.
No. 47590.
Supreme Court of Mississippi.
January 7, 1974.
*767 C.E. Morris, Jr., Biloxi, Lewis & Henley, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Pete J. Cajoleas, Special Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
This appeal arises from the Second Judicial District of Harrison County where Charlie Edward Shore, Jr. was convicted of murder and sentenced to life imprisonment.
Since the Court is of the opinion this is a proper case for another jury to pass upon, we refrain from the details of the evidence, stating only that which we believe necessary for coherence.
At approximately 11:30 p.m. on the evening of May 24, 1972, Officers McMurrian and Wallis of the Biloxi Police force were routinely patrolling on Pass Road in the city of Biloxi. They observed the appellant and a young woman, then unknown to them, standing in close proximity to a Volkswagen automobile which was parked off of the road and which had its door open on the driver's side. After passing the scene, they decided to investigate and as they returned observed the appellant seize the young woman by the hair of her head and heard her scream. The appellant was arrested and placed in the patrol car for transportation to the police headquarters in the city.
The young woman and her boy friend who approached the scene as the arrest was in progress, both teenagers, were directed to accompany the officers to the patrol headquarters. About this time the officers were informed by some passerby, as well as receiving a radio call conveying the same information, that there was a drunk or sick man staggering around on Pat Harrison Avenue; whereupon the Volkswagen, which belonged to the appellant, was locked and the patrolman with their entourage proceeded to Pat Harrison Avenue to investigate.
Upon their arrival on the avenue at a point approximately one-half to three-fourths of a mile from where the appellant was arrested, they discovered the body of a man lying face down upon the sidewalk. A scrutiny of his body revealed that he had been fatally stabbed. One of the officers remained at the scene while the other transported the appellant and the two teenagers to the police station.
Approximately three hours later Officers Wallis and McMurrian were instructed to return to Pass Road and bring the appellant's automobile to the station. The keys to the automobile, which had been previously obtained from the appellant, were handed to them for that purpose. After the doors to the automobile were unlocked and while Officer Wallis was adjusting the driver's seat preparatory to driving to the station, his hand struck an object between the seats which incited his curiosity. The beam of a flashlight was placed upon the object and it was revealed to be a knife with blood and hair upon it. Officer Wallis thereupon called his superior informing him of his discovery, secured the knife as evidence, relocked the car, called a wrecker to tow it to a place of safekeeping and returned to headquarters.
*768 The appellant was then charged with the murder of the man who was found fatally stabbed on Pat Harrison Avenue, later identified as Francis J. Bernosky.
The appellant admitted ownership of the knife and gave permission for his automobile to be searched. The quest thereafter disclosed a leather knife scabbard in the pocket of the car with the appellant's name written on it.
The victim's bloody shirt and T-shirt, as well as a leaf with a drop of blood upon it found near the body, and a sample of the victim's chest hair were analyzed and compared with the blood and hair found upon the knife. This comparison revealed the blood on the shirts, the leaf and the knife to be Type "A". The analysis of the hair found on the knife revealed it to be brown Caucasian trunk hair. There is no evidence to identify either the blood or the hair as being that of the victim though from the photographs exhibited in the record we discern the deceased to have been of the Caucasian race. Additionally, the stab wound was found to be about 2 1/2 inches in depth, approximately the bloodstains found on the knife.
The dominant assignment of error is that the trial court errred in not directing a verdict for the defendant since this is a circumstantial case in which the evidence is so weak that it will not support a conviction for murder.
After full consideration of the evidence and the total circumstances of the case, including two factors hereinafter mentioned, we agree that another jury should pass upon this unusual case. The evidence of the state is outlined above, but when considered in its essentials with due regard to its maximum impact, the most that can be said for it is that the knife of the appellant with blood and hair upon it was found in his automobile approximately one-half to three-fourths of a mile from the body of Bernosky. There is no evidence of motive, no evidence that the appellant and the deceased had ever been together or even that they were acquainted. Moreover, at the time of his arrest, which coincided with the time the report was made that a man was staggering on Pat Harrison Avenue, the appellant did not appear to be emotionally upset, his only statement being, "This is absurd." No blood or bloodstains were found upon his person or clothing and none in his car.
From these facts we conclude, as did the trial judge in his ruling upon a motion for a directed verdict, that this is a weak case based totally upon circumstantial evidence. Under these circumstances and with the seriousness of the indictment in mind, we are of the opinion that justice requires another jury to pass upon the guilt or innocence of the appellant. In Feranda v. State, 267 So.2d 305 (Miss. 1972), the Court stated:
This Court will rarely set aside the verdict of the jury on an issue of fact. However, the evidence presented as to the appellant's guilt is of such a weak nature as to create a serious question as to whether or not the state sufficiently established the guilt of the appellant. We feel, therefore, that another jury should be allowed to pass upon the guilt or innocence of the appellant. (267 So.2d at 307)
It is next contended that a comment of the trial judge upon the testimony of Officer Wallis, "I know of nothing that was brought out that would impeach, Mr. Vlahos. I don't think that he was impeached," made in the presence of the jury was prejudicial error. A review of the witness's testimony indicates conflicting statements by him as to whether the knife was carried by the witness to the police headquarters after its discovery or whether it was handed to Captain Bourgeois who carried it to headquarters. The point may be immaterial. However, the comment by the trial judge could, and very likely did, have the effect of bolstering the witness's testimony in the eyes of the jury since the court's stamp of approval was upon it. *769 We do not state that the comment alone would constitute reversible error, but we do point out that comment upon the evidence by a trial judge in the presence of the jury is hazardous to affirmance on appeal. See Green v. State, 97 Miss. 834, 53 So. 415 (1910), wherein this Court stated:
It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party. 21 Encyc.P. & P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption. (97 Miss. at 838, 53 So. at 416)
The other factor which we mention with the hope that it will not recur is that witnesses for the state, including Officer Wallis whose testimony was referred to as being unimpeached, referred many times in their testimony to the hair-pulling incident which necessitated the appellant's arrest. It was referred to as an "assault," as an "assault and battery," and "booked on the assault charge," some of the witnesses going into detail. We note that no objection was interposed by defendant's counsel to this testimony and indeed, on one occasion on cross-examination defense counsel himself referred to the "assault." Nevertheless this course of testimony was not conducive to the fair trial of the appellant, especially since it was stated so many times. We repeat that which was stated in Coleman v. State, 198 Miss. 519, 23 So.2d 404 (1945):
We do not pursue the details except to say that at points in this record it is difficult to tell whether the prosecution was for the attempted arson laid in the indictment, or whether for unlawful cohabitation, or whether the arraignment was for immorality in general. (198 Miss. at 522, 23 So.2d at 405).
The above quotation is cited so that the appellant might receive a fair trial upon the charge in the indictment bereft of any prejudice that might emanate from initial charges leading to the appellant's arrest.
We have considered the other assignments of error, including the contention that the vehicle of the appellant was illegally searched at the time the knife was discovered, and find them to be without merit.
Reversed and remanded.
RODGERS, P.J., and INZER, SUGG and BROOM, JJ., concur.