PATTERSON, Chief Justice,
for the Court:
Clarence Bennett, Jr. was convicted in the Circuit Court of the Second Judicial District of Jones County for the murder of Kenneth M. Marshall. He was sentenced to life imprisonment and presently appeals, assigning as error that (1) the evidence does not support the jury’s verdict, (2) the court erred in admitting testimony implying he had committed a separate offense and (3) the court erred in submitting the case to the jury without any of the state’s instructions.
On August 8, 1978, at about 2:00 a. m., Eugene Brown and Rosita Townsend were awaiting a cab in a well-lighted area at the corner of Hickory and Pine Streets in the city of Laurel when Bennett, the appellant, came into view walking in a westerly direction on Hickory Street toward an apartment complex in which it was later determined that Marshall resided. Brown recognized Bennett, an acquaintance, and identified him at trial. He testified Bennett was carrying a single barrel shotgun as he continued. to walk westward. Brown’s companion, Rosita Townsend, although not acquainted with Bennett, testified she saw the man walking westerly on Hickory Street with something in his hand. Ten or fifteen minutes after Bennett had passed, both Brown and Townsend heard a shotgun fire in the vicinity of the apartment and shortly thereafter again observed Bennett coming from the direction of the apartment and walking hastily north on Pine Street. Both testified he was carrying a shotgun as he hurried northward along the street. Brown also testified that he observed no other person in the vicinity at the times he saw Bennett.
Later in the morning, about 8:30, Helen McGill, Marshall’s landlady, discovered Marshall’s body in the apartment. She notified the police, and investigating officers found that Marshall had been shot. They also discovered a considerable amount of marijuana in Marshall’s room. An autopsy was performed which revealed the cause of death to have been a shotgun wound in the neck. A firearms expert testified he could not positively link the shotgun pellets and wadding removed from the deceased to the shotgun belonging to the appellant although he did express the opinion they were compatible with the appellant’s gun.
The appellant was taken into custody by Officer Hare of the Laurel Police Department. Through the use of an informant, police learned of a shotgun hidden under an abandoned automobile near the northeast *805 side of Pine Street four to five blocks north of the intersection of Hickory and Pine Streets. On August 21, 1978, Police Detective Shanks, using the information gleaned from the informant, discovered a 16-gauge single barrel shotgun containing one spent shell under the abandoned automobile. The gun was identified as belonging to Bennett, as will be hereinafter related.
While in jail, Bennett conversed with his mother in the presence of Jerry Campbell, a cellmate. Campbell testified that Bennett told his mother to “put it [the gun] behind the front seat of the truck or put it up under the mattress of his bed and wrap it up the way he had it before in a blanket.” The state offered no physical evidence such as fingerprints to place Bennett at or near Marshall’s apartment on the morning of August 8, but it did adduce circumstantial evidence strongly suggesting appellant’s guilt. The state offered witnesses who testified the appellant and Marshall had a verbal altercation concerning marijuana which Marshall was unwilling to sell to Bennett on credit. Officer Shanks testified that Bennett admitted arguing with Marshall about marijuana at a local nightspot around midnight preceding the early morning homicide. Clarence McLelland testified that he lived in an apartment behind the deceased and heard Marshall arguing with someone about 2:00 or 2:15 a. m. although he did not hear gunfire. John L. Walker testified, without objection, that the police came to his house on August 8 and asked him whether he had taken the appellant home on the night of the homicide as Bennett had related to them. Walker testified that Bennett’s statement was not true, because he had not carried him home.
At the conclusion of the evidence the court denied appellant’s motion for a peremptory instruction, and counsel for the state and the defendant discussed various instructions with the court. The state eventually withdrew the two instructions which had been proffered, because they were cumulative with the instructions requested by the defendant. In this circumstance, the court instructed the jury on the burden of proof, the essential elements of the offense and the need for a unanimous verdict.
Bennett first argues the evidence does not support the jury’s verdict inasmuch as it is circumstantial. The state agrees the verdict rests upon circumstantial evidence, but contends it is sufficiently strong to sustain the verdict. We agree with the state’s contention, because its evidence establishes an argument between Bennett and Marshall over the sale of marijuana shortly (within two hours) before the shot was fired, which we believe sufficient to establish motive when consideration is given to the other circumstances. They are that Bennett was seen walking in the direction of Marshall’s apartment with gun in hand shortly (ten or fifteen minutes) before Brown and Townsend heard a shot. Immediately afterward these same witnesses saw Bennett come from the direction of the apartments and walk hurriedly northward along Pine Street with a gun in hand. The gun was later found under an abandoned automobile alongside Pine Street and was later identified as belonging to Bennett. Additionally, Bennett requested his mother to retrieve the gun and conceal it.
Of course, no precise rule can be formulated to simplify the question of what constitutes believable circumstantial evidence sufficient to support a verdict. Of necessity it must be approached from the factual circumstances of each case. We are of the opinion this record reveals circumstantial evidence sufficient to support the jury verdict; in fact, we think it quite strong. We have stated many times that a conviction on circumstantial evidence is sufficient to support a verdict so long as the evidence can be said to prove guilt beyond a reasonable doubt to the exclusion of every other reasonable hypothesis. Fortenberry v. State, 216 Miss. 243, 62 So.2d 325 (1953). It is equally well established that a fanciful, whimsical, or otherwise unreasonable hypothesis of innocence does not require reversal. Baker v. State, 317 So.2d 901 (Miss.1975). Numerous cases illustrate the tendency of this Court to leave factual issues in *806 a “circumstantial evidence case” for the jury’s resolution. Bonnett v. State, 317 So.2d 907 (Miss.1975), Carter v. State, 310 So.2d 271 (Miss.1975), and Burge v. State, 282 So.2d 223 (Miss.1973).
The appellant contends that Shore v. State, 287 So.2d 766 (Miss.1974), supports his view of evidential insufficiency. Shore, supra, was reversed under circumstantial facts entirely different from the present, thus distinguishing it. As mentioned, the affirmance or reversal of a jury verdict depends upon the facts presented to that jury. The facts must be reviewed on an ad hoc basis and although comparison is made to other cases, eventually the Court must look to the precise facts presented to the particular jury for its determination. We have done so in this case and are of the opinion the evidence, albeit circumstantial, was sufficient to support the jury’s verdict.[1]
Bennett next argues that he was prejudiced by an improper reference to a rifle which he had formerly owned, because it suggested that he was guilty of other crimes. In the course of presenting its evidence the state placed Officer Shanks and Jimmy Young on the stand. Shanks testified that Bennett denied owning any kind of weapon and that he told him “he used to own a .22 rifle, because — he had owned a .22 rifle because we had it at the police department at one time.” No objection was interposed to this testimony. Witness Young testified that he traded the shotgun which was found under the abandoned automobile to Bennett in exchange for a .22-caliber rifle. He was asked the following questions:
Q. All right, and when was this trade?
A. It was about a month after he got his rifle away from the City Police Department.
Q. What now?
A. When he got his rifle from down there he kept it about a week and he asked — and I asked him about trading it.
An objection and motion for mistrial were interposed to the last question. The court overruled both, because it was of the opinion there was no intimation in the testimony that another wrongful act had been committed.
We note the innuendo, if there was one, arising during the examination of Officer Shanks did not draw an objection; therefore, argument for reversal based upon his testimony or later testimony of the same kind was not preserved for appellate review. Williamson v. State, 330 So.2d 272 (Miss.1976); Brown v. State, 293 So.2d 425 (Miss.1974). Secondly, although an objection and motion were interposed to the testimony of witness Young, nevertheless, we cannot reach the conclusion that a mere reference to a gun having been previously possessed by the police gives rise to an inference that another crime has been committed sufficient to constitute prejudicial error. The rifle may have been lost or stolen from the appellant and recovered by the police until Bennett came to claim it as his property, or other variables may have occurred distinct from and not implying guilt of another wrongful act. We find this assignment to be without merit.
Finally, Bennett argues the jury was not properly instructed, because the state failed, in his view, to fulfill the duty imposed upon it to see that proper instructions were given. We are of the opinion the defendant’s instructions in conjunction with those given by the court were sufficient to inform the jury properly of the law applicable to the case. We do think the district attorney took great risk of reversal in not seeking proper instructions, and we affirm only because the trial judge realized the danger and properly instructed the jury. Compare Morgan v. State, 370 So.2d 231, 234 (Miss.1979) (concurring opinion).
*807 The record discloses no error in fact or law upon which a reversal could be reasonably based. We therefore affirm the verdict and the judgment of the trial court.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.

. Appellant suggests in his brief under his first assignment of error that another jury should be permitted to pass upon the question of the appellant’s guilt. We note in passing that this suggestion is quite inadmissible. After Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), a reversal based upon insufficiency of the evidence requires discharge: A new trial following such a reversal runs afoul of the Double Jeopardy Clause.