# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02595-SCT

*WALLACE WEATHERLY, M.D., AND*
*WEATHERLY SPORTS MEDICINE & FAMILY*
*ORTHOPAEDIC CLINIC, P.C.*

*v.*

*ADINA WELKER AND FORREST WELKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/2003 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK P. CARAWAY |
| | META S. COPELAND |
| ATTORNEYS FOR APPELLEES: | KENNETH CHARLES MILLER |
| | DEREK L. HALL |
| | THANDI WADE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 11/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case comes to this Court on appeal from the Circuit Court of First Judicial District of Hinds County, by defendants Dr. Wallace Weatherly and Weatherly Sports Medicine and Family Orthopaedics Clinic, P.A.( hereinafter "Weatherly"). This case involves a medical malpractice claim against Weatherly in connection with the care and treatment given to plaintiff Adina Welker (hereinafter "Ms. Welker") when she fell during a visit to Weatherly's clinic. On July 28, 2003, a jury returned a verdict in favor of plaintiffs

Adina and Forrest Welker (hereinafter "Welker") in the amount of $530,000, and judgment was entered in accordance with that verdict. Weatherly appeals and requests a new trial on all issues of liability and damages.

¶2.     We hold that the trial judge abused her discretion when she advised the jury venire of on-going settlement negotiations between the parties.

### FACTS AND PROCEDURAL HISTORY

¶3.     On July 13, 2000, Welker filed a complaint alleging medical negligence against Weatherly, who is a board certified orthopaedic surgeon who resides and practices in Hinds County, Mississippi, based on an injury Ms. Welker sustained during a visit to Weatherly's clinic.  On May 12, 1999, Ms. Welker came under the care of Weatherly for the first time when she made an office visit.  She filled out an intake form and was initially interviewed by one of Weatherly's surgical assistants.  She made complaints of hip pain and popping and disclosed that she suffered from neurally medicated hypotension.  Weatherly performed a physical examination of Ms. Welker and administered a steroid injection into the bursa of her hip.  There is some dispute as to how long. Weatherly remained in the room after the injection.[1]   After Weatherly left the room, Ms. Welker fainted and fell to the floor, causing her to suffer injuries which are the subject of this action.   The matter proceeded to trial on July 21, 2003.

---

[1] Ms. Welker testified that Weatherly left the room about one minute after administering the shot. However, Weatherly testified that he stayed in the examination room for at least five minutes and made sure Ms. Welker was not going to have an adverse reaction to the injection.

2

¶4.    On the first day of trial, the trial court met with the parties in chambers to inquire about the status of settlement negotiations. The court instructed the parties to leave the courtroom and discuss settlement before a jury was selected. At this point, the venire had been called to the courtroom. The trial judge then returned to the courtroom to perform roll call of the panels, at which time she informed the potential jurors that settlement negotiations were taking place outside the courtroom at that very moment. Neither the parties nor their attorneys were present when the trial judge made the following statement:

> This is another part of the selection process. It's called voir dire. But at this point I'm going to have to put you-all in recess again. And the recess is because the case that's scheduled to begin and we're supposed to be picking a jury for right now, the attorneys and the parties are talking settlement. They may not settle, and we may be here at some point talking about a trial going forward. If this happens as it does in 90 percent of the cases that are ever filed, then we won't need you. If they do not reach an agreement, then you will be back here at 1:00 and the jury will be picked.

Jury selection followed that afternoon, and later that evening counsel for Weatherly learned that the venire had been informed of an attempted settlement. The next morning, before opening statements, defense counsel made a motion for a mistrial and the selection of a new jury based on the trial court's violation of Rule 408 of the Mississippi Rules of Evidence. That motion was denied.

¶5.    The jury subsequently returned a verdict in favor of Ms. Welker in the amount of $500,000 and in favor of Forrest Welker in the amount of $30,000. Judgment was entered in accordance with the verdict. On August 14, 2003, Weatherly moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. On October, 2, 2003, the

3

trial court issued an order denying the post-trial motions, from which Weatherly filed a notice of appeal. On appeal, Weatherly presents the following issues for review:

I. **Whether the trial court erred by informing the venire of on-going settlement negotiations.**

II. **Whether the trial court erred in its application of the United States Supreme Court decision of *Batson v. Kentucky* to Dr. Weatherly's peremptory challenges.**

III. **Whether the trial court erred by denying a continuance of the trial date after Plaintiffs disclosed critical medical records seven days prior to trial.**

IV. **Whether the trial court erred by refusing to instruct the jury on Dr. Weatherly's claim of contributory negligence.**

V. **Whether the trial court erred by giving Jury Instruction 12, which was peremptory in nature, and which did not state the standard of care to be applied to Dr. Weatherly's care and treatment of Adina Welker.**

Because the determination of the first issue controls, we need not address the other issues.

## DISCUSSION

I. **Whether the trial court erred by informing the venire of on-going settlement negotiations.**

¶6. Weatherly asserts on appeal that the trial court erred by informing the venire of on-going settlement negotiations. Weatherly argues that Rule 408 of the Mississippi Rules of Evidence disallows the mentioning of settlement negotiations at any time during trial, with one exception pointed out in *Smith v. Payne*, where the fact of settlement was used for the purpose of explaining the absence of a settling defendant at trial. 839 So. 2d 482, 487 (Miss. 2002). With regard to disclosing the amount of settlement, the Court stated that the probative value, if any, of the settlement amount is substantially outweighed by the danger of unfair

4

prejudice; however, this case does not offer any guidance with regard to the factual situation in the present case. *Id.* Weatherly cites cases from other jurisdictions, which found that Rule 408 prohibits the trial judge from discussing settlement negotiations with the jury. *See infra* *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1071 (5th Cir. 1986); *Fahrbach v. Diamond Shamrock, Inc.*, 928 P.2d 269, 274 (N.M. 1996). Relying on *Green v. State*, 97 Miss. 834, 53 So. 415, 416 (1910), Weatherly submits that the proscription against discussing settlement negotiations found in Rule 408 applies with even greater force to the trial court because of the importance that jurors place on the judge.

¶7.    Rule 408 provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Miss. R. Evid. 408. Although evidence of settlement is not admissible to prove liability or the invalidity of a claim under Rule 408, "this rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.*

¶8.    There are no Mississippi cases directly on point with regard to whether a trial court's disclosure of on-going settlement negotiations between parties actively involved in a trial to the venire violates Rule 408; however other jurisdictions provide guidance. In *Fahrbach*, the Supreme Court of New Mexico stated that an analogous version of Rule 408 applies

5

equally to "comments of the court or of counsel made in argument to jury or in voir dire." 928 P.2d at 274. The Fifth Circuit has held that Federal Rule 408 bars the admission of evidence of settlement unless it is admissible for a purpose other than "to prove liability for or invalidity of the claim or its amount" **Kennon**, 794 F.2d at 1069. Similar to this Court's reasoning in **Smith**, the Fifth Circuit held that while it is reversible error for a trial court to reveal the amount of settlement, revealing the fact of settlement is permissible when it explains the absence of settling defendants who were previously in court because it serves the purpose of reducing jury confusion. **Id.** at 1070. However, unlike **Smith** and **Kennon**, mentioning the settlement in this case was *not* for the purpose of explaining the absence of a settling co-defendant; in fact, there was no purpose in disclosing the parties' settlement negotiations and in our view to do so was prejudicial error. We find that the disclosure of settlement negotiations in this case clearly falls outside of the permissible purposes set out in Rule 408. The trial court reasonably could have and should have found a more appropriate way of dealing with the delay without disclosing to the venire that the parties were trying to settle the case, which implies responsibility for the injury.

¶9.     One authority provides:

> As a general rule, if a trial judge refers at all to the subject of a compromise, he must do so in such a fashion that no party may complain of bias, hostility, or duress, or a predetermined result. Nor may any of the above be made apparent to a jury. Thus, broadly, it has been regarded as prejudicial error for a trial judge to demonstrate hostility in his remarks to a party, or to the jury, or to suggest that the party might be visited with an adverse result should he fail to settle, especially if the jury is aware of such attitude.

D. L. Spillman, Jr., Annotation, *Propriety and Prejudicial Effect of Suggestion or Comments by a Judge as to Compromise or Settlement of Civil Case,* 6 A.L.R. 3d 1457, 1460

6

(1966)(footnote omitted). Welker emphasizes that "merely to refer to compromise as a generally desirable resolution or to point out that compromise is a technique available to litigants, however has not been regarded as erroneous." *Id*. However, Welker fails to recognize that the judge in this case did not merely refer to compromise as a desirable resolution, but actually informed the venire that the parties, in the case that they were about to consider, were engaged in settlement negotiations at the very moment that they sat in the courtroom awaiting jury selection. When the jurors returned for voir dire following the trial court's statement, it was obvious that the case did not settle. Shortly after, counsel for Welker told the venire that the evidence would show that Ms. Welker's actual damages were $4,000,000. The jury reasonably could have concluded that Weatherly had seriously considered a multi-million dollar demand in the morning negotiations, which could have inadvertently resulted in prejudice. Therefore, the trial court's reference to the settlement was not done "in such a fashion that no party may complain of bias, hostility, or duress, or a predetermined result." *Id.*

¶10.    Even more critical, considering what occurred in the case at bar, in ***Green***, this Court stated that jurors are very susceptible to the influence of the judge, and thus a judge "cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party." 53 So. at 416. The Court further stated that "a reviewing court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption." ***Id.***    Therefore, whether the jury was actually prejudiced

7

or influenced by the statement is not for the Court to decide; rather, the mere fact that the statement was made to the jury creates a conclusive presumption of such prejudice. We continue to adhere to *Green*. We note that the trial judge egregiously advised the jury that "90 percent of the cases that are ever filed" [settle]. This statement only further highlighted the prejudice. Taking into consideration the importance placed on trial judges and their role in safeguarding impartiality, we find that the trial court abused its discretion by informing the venire of last minute, on-going settlement negotiations taking place on the first day of trial.

## CONCLUSION

¶11.    We find that the trial court committed reversible error when it informed the venire of on-going settlement negotiations between the parties. Accordingly, we reverse the trial court's judgment and remand this case for a new trial on all issues.

¶12.    **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**