# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01732-SCT

*ELZIE JUNIOR HARRISON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/2009 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY:  W. DANIEL HINCHCLIFF |
| | LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/09/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    Elzie Junior Harrison appeals from his conviction on five counts of statutory rape and sexual battery.  Harrison raises two assignments of error based on comments made by the trial court, but did not raise an objection at the time the comments were made.  Both assignments are without substantive merit.  We affirm the judgment of the Neshoba County Circuit Court.

## **FACTS**

¶2.     S.W. (born January 17, 1991) lived in the Linwood community of Neshoba County with her mother, two brothers, and stepfather, Harrison (born December 17, 1981).  S.W. testified that, on Mother's Day, 2004, Harrison was present while she and her brothers were preparing a Mother's Day card.  She said she was looking down at the card, but Harrison seemed to think that she was looking at his crotch.  S.W. testified that he looked down at himself and then smiled at her.  She stated that, shortly thereafter, he sent her mother out of the house on an errand, told the boys to go to their room, and told her to go to another room.  She said he came in and had sex with her, penetrating her mouth and anus.  S.W. testified that, in the next few weeks, while she was still thirteen, he started having vaginal sex with her, and that this continued numerous times at various locations, until after her sixteenth birthday.  After she began to go to church, her pastor noticed that she was depressed and began to counsel her.  Eventually, she confided in him.  He advised S.W. and her mother to report Harrison to the sheriff's office.  They did so.  Harrison was arrested and gave a statement to an investigator after waiving his right to counsel.  The investigator wrote a statement, read it back to Harrison, and gave him an opportunity to make changes.  Harrison signed the statement, which reads as follows:

> I am not sure of the date but when we were living in Linwood [S.W.] my step-daughter would come onto me and I did not have sex with her but I did touch her privates with my hands.  In 2006 we were living [near Philadelphia] and [S.W.] came onto me again and I did have sex then.  I had sex with [S.W.] 3 or so different times in 2006.  [S.W.] was 16 years old in 2006.  I haven't had sex with [S.W.] since 2006.

2

Harrison was indicted on five counts: (1) Statutory rape for intercourse with a child under age fourteen; (2) Sexual battery for oral sex with a child under age fourteen; (3) Sexual battery for anal sex with a child under age fourteen; (4) Statutory rape for intercourse with a child between the ages of fourteen and sixteen; (5) Sexual battery for intercourse with a sixteen-year-old child by a person of trust or authority over the child. *See* Miss. Code Ann. §§ 97-3-65(1)(b), 97-3-95(1)(d), 97-3-95(2) (Rev. 2006).

## PROCEDURAL HISTORY

¶3.     Trial was held July 14-15, 2009. Prior to *voir dire*, the judge made introductory remarks, including instructing the jury that an indictment means only that twelve members of a grand jury, hearing only the State's side of the case, have found that probable cause exists that a crime has been committed. The judge explained, *inter alia*, the presumption of innocence, the burden of proof, and the requirement of unanimity. Immediately after the jury panel was selected, the judge continued his introductory and explanatory remarks before excusing those veniremen who had not been selected. As this was the last jury trial of the week, those not chosen had completed their jury duty. The judge extolled the value of jury service and thanked the venire members for having served. The judge described jury service as a "good and noble thing," an "indispensable link," and "part and parcel of the rule of law." He recalled a speech he had given on Independence Day and compared our system to that of Iran, where "there's no such thing as a jury trial or an indictment . . . ." Following these remarks, the judge excused those venire members who had not been chosen and continued his explanatory remarks, including informing the witnesses and the jury that they would be

3

excused for lunch. He instructed the witnesses not to have any contact with the jurors, and told the jurors not to discuss the case among themselves or with others. Harrison did not object at any time to any remark by the trial judge.

¶4. On two occasions – just before the first lunch break and just before excusing the jury for the night – the court described the case as a "capital case." In both instances, the comment was made to impress upon the jurors and witness the seriousness of the case and the importance of their following the court's instructions. The court never said it was a capital-murder case or a death-penalty case. Harrison did not object on either occasion.

¶5. During S.W.'s testimony, when she was first asked about the events of Mother's Day, 2004, she struggled with completing her answers. The judge asked her if she needed to take a break. He told her to try to answer if she could, but assured her that if she could not go on, he would allow her to take a break. Following this, the prosecutor asked some preliminary questions, but when he returned to questions about Mother's Day, S.W. spoke softly and was told to speak up. She was again unable to answer, and the judge ordered the court in recess. While the jury was out, the judge spoke to S.W., introducing himself, explaining the circumstances, and attempting to calm her down enough to continue. S.W. accepted the judge's offer take a break to compose herself. She left the courtroom accompanied by a female bailiff. When S.W. returned, the judge again instructed her to speak loudly enough to be heard and to answer the questions to the best of her ability. She assured the judge that she could do so. After questioning resumed, the following colloquy occurred:

4

State: Now, at any time that day, did you get any idea about what it was that he thought you were looking at? . . . .

Defense: Objection to speculation. As to what the defendant thought.

Court: I'm going to overrule the objection. I think that's a valid question. Go ahead and answer the question if you can.

S.W.: Yes.

State: And what was that?

S.W.: His private area.

State: So he was standing in a position such, with respect to the card you were gazing at –

Defense: Objection to leading.

Court: I'll sustain that. Try not to lead.

State: Judge, I'm just trying to re-cap and give some context to what she's testified about.

Court: Okay.

State: No[w], once you looked at the card, was he standing in an area near where he would have been able to think you were looking at him?

Defense: Objection to speculation on what the defendant would have been thinking.

Court: I'm going to overrule the objection. The – what we're seeking is the truth. . . . The court is seeking to allow that to come in within the parameters of the rules. The witness is a child, eighteen years of age now, but was thirteen at the time, and within that total context, the court is seeking to stay away from the rule, as far as leading, but also to get at the truth and I would instruct counsel to do the best that he can . . . to not lead. So go ahead and make another effort.

Harrison neither objected to the trial court's statement nor claimed that the trial judge had vouched for the veracity of the witness.

¶6.     The jury found Harrison guilty on all five counts.  The court sentenced Harrison to fifty years.  The court denied Harrison's motion for judgment notwithstanding the verdict or, in the alternative, new trial.  In it, Harrison raised seven assignments of error, none of which is repeated in his brief to this Court.

## ISSUES

¶7.     The issues, as quoted from Harrison's brief,[1] are as follows:

I.      Did the trial court's repeated mischaracterization of the case as a "capital case" taint the jury and prevent Harrison from receiving a fair trial.

II.     Did the trial court comment on the veracity and the truthfulness of the State's primary witness thereby deny Harrison a fair trial.

III.    Whether the cumulative effect of the foregoing judicial comments, if they were otherwise not found to be reversible error, was sufficient error to require this cause be reversed.

## ANALYSIS

¶8.     The standard of review for the issues raised is abuse of discretion.  *See Miller v. State*, 996 So. 2d 752, 756 (Miss. 2008); *Strickland v. State*, 980 So. 2d 908, 916 (Miss. 2008).

**I.      Did the trial court's repeated mischaracterization of the case as a "capital case" taint the jury and prevent Harrison from receiving a fair trial.**

---

[1] Harrison's brief also includes arguments regarding the propriety of the "law and order speech."  However, this argument was not raised as a separate issue.  *See* Miss. R. App. P. 28(a)(3).

6

¶9. This issue is procedurally barred. Harrison did not timely object, include this issue in his post-trial motion, or argue on appeal why it should not be procedurally barred. *See Doss v. State*, 709 So. 2d 369, 381 (Miss. 1996) (citing *Foster v. State*, 639 So. 2d 1263, 1286 (Miss. 1994)) ("the contemporaneous objection rule also applies to comments by the trial judge").

¶10. Should we overlook the bar and consider the assignment of error, it is without merit. Harrison argues that a "'capital case' [is] a case, meriting the ultimate penalty," thus, the jury must have thought Harrison was deserving of the death penalty. Harrison first cites a century-old case stating that jurors are "very susceptible to the influence of the judge." *See Green v. State*, 97 Miss. 834, 53 So. 415, 416 (1910). *Green* is distinguished, as the judge's statements evinced prejudice toward the defendant and indicated to the jury the preferred outcome. *Id.* ("We want to break this [racial epithet]'s neck."). Other cases cited by Harrison also are distinguishable. *See Fermo v. State*, 370 So. 2d 930, 933 (Miss. 1979) (trial court involved itself in plea negotiations); *Hannah v. State*, 336 So. 2d 1317, 1321 (Miss. 1976) (trial court asked prosecutor if he had an objection).

¶11. Furthermore, the trial court's comments were not without support in the law. "'[C]apital case,' . . . when used in any statute shall denote criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary. " Miss. Code Ann. § 1-3-4 (Rev. 2005). Harrison was indicted on two counts of statutory rape, a crime for which life imprisonment is possible. *See* Miss. Code Ann. § 97-3-65(2)(c) (Rev. 2006).

¶12.    First, we find that this assignment of error is procedurally barred. We also find that, if the procedural bar is not applied, the argument is without merit.

### II.    Did the trial court comment on the veracity and the truthfulness of the State's primary witness thereby deny Harrison a fair trial.

¶13.    Harrison argues that the trial court's comment was a "stamp of approval" that signaled to the jury that the judge believed her and that the defense was trying to prevent the truth from being told. The State argues that this issue also is procedurally barred by the contemporaneous-objection rule. However, these comments were made in an objection colloquy. Such a ruling would require a litigant to object to the explanation of a failed objection.

¶14.    The trial court did not vouch for S.W.'s veracity, but only commented that getting to the truth was the court's goal. "[T]hat the truth may be ascertained" is among the ultimate purposes of the rules of evidence. Miss. R. Evid. 102. Even when a trial court's comments "have the effect of bolstering a witness's testimony in the eyes of the jury," they do not necessarily constitute reversible error. *Shore v. State*, 287 So. 2d 766, 768 (Miss. 1974). In *Shore*, this Court found that a judge's comment was a "stamp of approval," as he had said that a witness had not been impeached. *Id.* at 768. However, the appeal was not decided on that point, as the Court already had found reversible error on another issue. *Id.* "We do not state that the comment alone would constitute reversible error, but we do point out that comment upon the evidence by a trial judge in the presence of the jury is hazardous to affirmance on appeal." *Id.* at 769 (citing *Green*, 53 So. at 416).

8

¶15. A trial court is permitted to explain its rulings, but not to make prejudicial comments about the evidence. *Wells v. State*, 698 So. 2d 497, 510 (Miss. 1997); *Lofton v. State*, 818 So. 2d 1229, 1232 (Miss. Ct. App. 2002). Although the overruled objections here were for speculation, the issue on appeal is the court's reasoning, which related to a leading question. A trial court has the discretion to allow leading questions under certain circumstances, so long as doing so does not prejudice a "complaining party." *Jones v. State*, 606 So. 2d 1051, 1059 (Miss. 1992) ("The classic example for allowing the use of leading questions is where a child is a witness.").

¶16. This Court has described the balancing act required of a trial court judge as follows:

> Of course, he should keep off of the province of the jury, and not try to influence their verdict; and while it might be safer for him to rule without giving his reasons therefor, he has the right to give such reasons if he so desires, and to show why, in his opinion, the reasons advanced for a contrary ruling are unsound. . . . It is true that "an overspeaking judge is no well-tuned cymbal," but . . . neither is an aphonic dummy a becoming receptacle for judicial power.

*Bumpus v. State*, 166 Miss. 276, 144 So. 897, 899 (1932) (quoting *Berger v. U. S.*, 255 U.S. 22, 43, 41 S. Ct. 230, 236, 65 L. Ed. 489 (1921)).

¶17. We find no error on this issue.

### III. Whether the cumulative effect of the foregoing judicial comments, if they were otherwise not found to be reversible error, was sufficient error to require this cause be reversed.

¶18. There being no "error, harmless or otherwise," there can be no cumulative error.

*Lynch v. State*, 951 So. 2d 549, 556 (Miss. 2007).

## CONCLUSION

¶19.    The judgment of the Neshoba County Circuit Court is affirmed.

¶20.    **COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT IV: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT V: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS I, II AND III SHALL RUN CONCURRENTLY FOR A TOTAL OF TWENTY (20) YEARS TO SERVE. SENTENCE IN COUNT IV SHALL RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I, II AND III. SENTENCE IN COUNT V SHALL RUN CONSECUTIVELY TO SENTENCES IN COUNTS I, II, III AND IV FOR A TOTAL OF SIXTY (60) YEARS TO SERVE.  THE COURT SUSPENDED TEN (10) YEARS FROM THE SENTENCE IN COUNT V, LEAVING A TOTAL OF FIFTY (50) YEARS TO SERVE, AND WHICH SENTENCE SHALL BE SERVED DAY-FOR-DAY.**

**WALLER, C.J., CARLSON, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY. DICKINSON, J., CONCURS IN PART AND RESULT WITHOUT SEPARATE WRITTEN OPINION.**