# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00044-COA

**DARRELL DEVONTE MARTIN A/K/A**        **APPELLANT**
**DARRELL MARTIN**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2022 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/21/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. A DeSoto County grand jury returned an indictment charging Darrell Devonte Martin with aggravated assault in Count 1 and armed robbery in Count 2. Although incarcerated in the DeSoto County jail, Martin refused to attend his trial. Martin was tried in absentia and convicted of both Count 1 and Count 2 and was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) for Count 1 and to serve twenty years in the custody of the MDOC for Count 2, with the sentences ordered to run consecutively. On appeal, Martin argues that the verdicts were contrary to the overwhelming weight of the evidence.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On May 3, 2021, John Davis and his girlfriend Jenny Smith were shopping at the Tanger Outlet Mall in Southaven, Mississippi.  According to Davis, he was resting on a bench inside the Guess outlet store in the shoe department holding Smith's shopping bag while she continued to shop.  Davis testified that he noticed a man looking directly at him from across the store wearing a hoodie with MTV's logo on the front, red sunglasses, and a COVID-19 prevention mask.  Davis stated that he was unable to see the man's face, but the man was walking very fast through the store, not shopping.  Davis told the jury what happened next:

> I hadn't been sitting there a minute, and all of a sudden, it just felt like someone was hitting me on the back of the head.  So he hit me about four times, and I started to raise up and I raised my hands up, and he hit me in my ribs up under my arm.  Anyway, I kept raising up.  And when I turned around, he grabbed the bag out of my hand, stepped off the edge of the chair and slipped and tore the bag.  He got up and continued running.  I turned around to look and see if my girlfriend was there.  So I didn't see her.  She was still back there shopping.  I guess she didn't know what  - - she hadn't made the run yet from hearing the disturbance.  So[,] I took off around the partition, and I [saw] him.  He was headed out the door.  He knocked somebody over in a stroller, and then I looked around because Jenny came up behind me. . . . There was a baby in the stroller. . . .  I don't remember if the baby got knocked out of the stroller or if it was just knocked over.  And then there was two men with the woman and the baby, and they were fighting with the guy outside on the concrete[.]

Davis also testified that not only did his assailant try to take the shopping bag he was holding, but he also snatched Davis' necklace off his neck during the attack.  According to Davis, the man dropped the necklace at the same time that the bag ripped, and both the bag and the necklace were left on the floor at the store.  Davis testified that he witnessed the fight among

2

the three men after he was attacked, and the assailant ran from the store. Davis stated, "So three guys [were] fighting. . . . I didn't know who was who until I realized the two guys were together and the other guy was walking off, and that's when I realized that's who it was." According to Davis, his assailant's hoodie was lying on the ground in the area where the men were fighting, and nobody in the fray was wearing sunglasses or a mask. Davis testified that despite the fact that none of the men were wearing the hoodie, the mask, or the sunglasses that Davis had previously used to identify his assailant, and because of the nature of their departures from the fight, he knew that the one man who was walking away alone was the same man who attacked him in the store. After the fight was over, Davis went outside to find his assailant. Unsuccessful in that endeavor, Davis left the mall and sought treatment for his injuries at Baptist Memorial Hospital in Southaven. Davis was treated for wounds to his head, neck, torso, back, and hands, including wounds inflicted by a metal hair pick used by his assailant. Davis was also successfully treated for a collapsed lung.

¶3. The marketing director from the Tanger Outlet, Mandelyn Staggs, also testified at trial. According to Staggs, she was "walking the property" with the mall's operation director near the Guess Outlet store on May 3, 2021. According to Staggs,

> [w]e were in the vicinity so we heard people screaming and loud screaming and yelling, and so when we turned the corner, we saw what appeared to be the tail end of an altercation. . . . I immediately grabbed my cell phone and called 911 and our operation's director grabbed his radio and called for our security. At that time it looked like three males had been fighting and a crowd had gathered, and they were disbursed basically.
>
> The first male passed by me and was on his cell phone, and the two other men came in after him basically; and I was on the phone with 911.

3

Staggs testified that the man who passed by her alone was not wearing a shirt but was carrying a t-shirt in his hand. While Staggs stopped the other two men to inquire about the incident, she continued to keep the third man in her sight. According to Staggs,

> [h]e headed north towards Nike in the mall. I was on the phone with 911, and so I was talking to the dispatcher and was able to stay at a distance and tell the dispatcher where he was going. He sat down on a bench and began to text on his phone, and then he made a phone call, and I remained at a distance. He then got up from the bench and exited the mall towards the parking lot. I still remained at a distance until I saw a Southaven PD on the scene.

At trial, the State presented Staggs with Martin's picture. Staggs identified Martin as the shirtless man who was walking in the opposite direction of the other two men and whom she described to the 911 dispatch operator. At this point during the trial, Martin's picture was received and marked as Exhibit 9-ID for identification only.

¶4. Jeremy Iverson from the Southaven Police Department was dispatched to the Tanger Outlet Mall on May 3, 2021. When he arrived at the mall, he was directed to shopper services where he came in contact with a security guard, and a male and female shopper with a small child in a stroller. Iverson testified that while he was speaking with those three individuals, the security guard was on his radio with another person who "had eyes on the suspect." Iverson was informed that the suspect was a black male, now wearing a blue t-shirt. According to Iverson, once he spotted the man matching that description, he got in his patrol car and approached the suspect. Iverson testified that when he tried to make contact with the man, he refused to stop and began to run away. Iverson got out of his car and pursued the suspect on foot. Additional officers arrived on the scene, and ultimately the man was apprehended by Officer Fred Sims and Officer Jeff Raines.

4

¶5.     Officer Sims testified that he was dispatched to the Tanger Outlet Mall on May 3, 2021. According to Sims,

> Whenever I arrived to the scene, Officer Iverson who just left, he had eyes on Martin. And at that point he was trying to get Martin to stop running away from him, but he refused. And whenever I got there and made contact with Martin, he looked at me and stopped and took off running again. . . . At that point, I ran after him and I pushed him down to apprehend him and took him into custody.

At trial, Sims was shown the picture of Martin that was labeled Exhibit 9-ID. Sims identified the man in the picture as the same man that he apprehended on May 3, 2021, and the picture was admitted into evidence as Exhibit 9.

¶6.     On February 8, 2022, Martin was found guilty of aggravated assault and armed robbery and sentenced as stated above. After the denial of his post-trial motion, Martin filed his notice of appeal on December 29, 2022.

## STANDARD OF REVIEW

¶7.     When considering the weight of the evidence on appeal, the Mississippi Supreme Court has held:

> When we review the denial of a motion for a new trial, we "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*. We only review the trial judge's decision to deny a new trial for an abuse of discretion.

## ANALYSIS

¶8.     Martin argues on appeal that the verdicts were "contrary to the weight of the

evidence" regarding his identification as the assailant in this case. Martin claims that Davis never identified Martin and that "the only witness arguably connecting Martin to the subject assault and robbery was Staggs who said she saw the end of a fight between three men and then Martin walking away." Martin points out that there was no forensic analysis performed on either the hair pick or the hoodie recovered from the scene. At trial, Martin made a motion for a directed verdict at the end of the State's case. In his rebuttal argument, Martin argued that the State had not produced a witness that could positively identify Martin as the person who assaulted Davis. Martin's motion was denied. On April 14, 2022, Martin filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Within his motion, Martin again challenged the weight of the evidence. While the State addresses both the sufficiency of the evidence and the weight of the evidence in its brief, the only issue properly before this Court is the weight of the evidence,[1] and therefore it will be the only issue discussed.

¶9.     Davis testified that he saw his assailant run out of the store and knock over a baby stroller in front of the store. Davis stated that there was a woman and two men with the baby stroller. According to Davis, his assailant began fighting with the two men. Although Davis lost contact with his assailant after the fight began, Staggs testified that as she approached the Guess store, she observed the conclusion of a fight between three men. She testified that two of the men stayed around the store to answer questions about the incident while one

---

[1] Mississippi Rules of Appellate Procedure 28(a)(3) reads: "A statement shall identify the issues presented for review. No separate assignment of errors shall be filed. Each issue presented for review shall be separately numbered in the statement. No issue not distinctly identified shall be argued by counsel. . . ."

6

individual left the premises. Staggs identified Martin as the man whom she witnessed leave alone. Staggs kept her eyes on Martin until Officer Iverson arrived from the Southaven Police Department. Iverson pursued Martin in his vehicle and on foot, but ultimately Martin was apprehended by Officer Sims. Sims also identified Martin at trial as the man he had apprehended near the mall on May 3, 2021.

¶10. In *Bennett v. State*, 374 So. 2d 803, 805-06 (Miss. 1979), the Mississippi Supreme Court reasoned:

> Of course, no precise rule can be formulated to simplify the question of what constitutes believable circumstantial evidence sufficient to support a verdict. Of necessity it must be approached from the factual circumstances of each case. . . . Numerous cases illustrate the tendency of this Court to leave factual issues in a "circumstantial evidence case" for the jury's resolution. *Bonnett v. State*, 317 So. 2d 907 (Miss. 1975), *Carter v. State*, 310 So. 2d 271 (Miss. 1975), and *Burge v. State*, 282 So. 2d 223 (Miss. 1973).

Further, our supreme court has historically recognized that "circumstantial evidence is not inferior to direct evidence when all of the facts are considered." *Bogard v. State*, 233 So. 2d 102, 105 (Miss. 1970). In *Cardwell v. State*, 461 So. 2d 754, 760-61 (Miss. 1984), the supreme court went a step further and stated that "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence." *See also Nevels v. State*, 325 So. 3d 627, 631-32 (¶¶12-14) (Miss. 2021). Finally, the United States Supreme Court has opined that both circumstantial and testimonial evidence are susceptible to the same strengths and weaknesses:

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the

7

evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. *If the jury is convinced beyond a reasonable doubt, we can require no more*.

*Holland v. United States*, 348 U.S. 121, 140 (1954).

¶11.   Davis was unable to identify Martin as the man who attacked him because Martin was wearing sunglasses and a mask at the time of the assault.  While none of the other witnesses actually saw Davis being attacked, the chain of events in the testimony outlined above provided sufficient circumstantial evidence for the jury to find, beyond a reasonable doubt, that Martin was the man who attacked Davis.  Viewing the evidence in the light most favorable to the jury's verdicts, we find that allowing these verdicts to stand would not "sanction an unconscionable injustice."  The trial court did not abuse its discretion by denying Martin's motion for a new trial.

### CONCLUSION

¶12.   After reviewing the record, we find no error by the trial court.  Therefore, Martin's convictions and sentences for aggravated assault and armed robbery are affirmed.

¶13.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**