966 So.2d 1269 (2007)
Laefaebei Euylessity STINGLEY a/k/a Laefaebei E. Stingley a/k/a Laefaevei E. Stingley, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00555-COA.
Court of Appeals of Mississippi.
October 23, 2007.
*1270 Brenda Jackson Patterson, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. On November 1, 2005, Laefaebei Euylessity Stingley was found guilty in the Circuit Court of Tunica County of possession of marijuana with intent to sell more than five kilograms of marijuana. On appeal, Stingley argues that there was insufficient evidence to support his conviction *1271 and that the trial court committed reversible error by the comments it made to the jury regarding the absence of Stingley's co-defendant, Perry Broadway.

FACTS
¶ 2. On April 21, 2005, Tunica County Deputy Sheriff Willie Dunn and Deputy Paul Biggins were returning from a lunch meeting. They were traveling south on Highway 61 in an unmarked car. The officers observed a 1991 Chevrolet Caprice traveling south well below the speed limit. They passed the Caprice, and deputy Biggins noticed that there were several tires in the backseat of the Caprice. He and deputy Dunn decided to pull the car over and question the driver about the tires because Tunica County had recently experienced numerous car burglaries.
¶ 3. Officer Dunn asked the driver, Stingley, for his driver's license. Stingley replied that his license had been suspended. Officer Dunn ran his license number and confirmed that it was suspended. The officers arrested Stingley and discovered that the passenger, Perry Broadway, had been drinking. The officers then conducted an inventory search of the car. Officer Dunn opened the trunk of the car and found a duffle bag. In the bag, he found several garbage bags, which contained several kilograms of marijuana. The marijuana was packaged in both loose and brick form. After deputy Dunn discovered the marijuana, deputy Biggins handcuffed Broadway. Then, Narcotics Detective Faye Pettis arrived and collected the marijuana for evidence.
¶ 4. At trial, detective Pettis testified that the value of the marijuana found in the Caprice was between forty to sixty thousand dollars. She also stated that neither Stingley's nor Broadway's fingerprints were on the duffle bag, the garbage bags, or any of the small bags of loose marijuana. However, she testified that when Stingley was asked why he had this much marijuana, he stated "[he] was going to have a Cheech and Chong party."[1] Detective Pettis believed that this meant Stingley was going to have a party with the marijuana.
¶ 5. After the close of the State's case, both defendants' attorneys moved for a directed verdict. The trial court found that the State had put forward sufficient evidence with regards to Stingley, but it granted Broadway's motion. In the presence of the jury, the judge explained, "[t]he Court dismissed the charges against the codefendant and you will only be deciding the case against Mr. Stingley."
¶ 6. During the defense's case, Stingley testified that he was driving to Memphis because he had to meet with his parole officer. His mother was unable to take him, and his car did not work. So, he borrowed his cousin's car. Mr. Broadway asked if he could ride with him, and Stingley consented. Stingley drove Broadway to a tire shop in Memphis and left him there while he met with his parole officer. Next, Stingley parked the car downtown at a valet parking garage and gave an attendant the keys. After the meeting, he picked up Broadway at the tire store. Stingley testified that Broadway put several tires in the back of his cousin's car. They started traveling south on Highway 61 where they were eventually stopped by deputies Dunn and Biggins.
¶ 7. Stingley testified that he never opened the trunk during the trip. He stated that Broadway was the only person *1272 to open the trunk during the trip. He said that Broadway opened the trunk and placed a turtle in it that they had found. He further testified that he did not know drugs were in the trunk and that he did not make any statement to detective Pettis regarding a "Cheech and Chong party."
¶ 8. Stingley filed a motion for judgment not withstanding the verdict or, in the alternative, a new trial, which the trial court denied.

ANALYSIS
I. Did the trial court err in failing to grant Stingley's motion for directed verdict?
¶ 9. Stingley argues that the trial court erred by denying his motion for directed verdict because there was insufficient evidence to show that he exercised dominion or control over the marijuana so as to constitute constructive possession of the contraband.
¶ 10. To evaluate whether the evidence given is sufficient, this Court must determine if any evidence may "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)) (emphasis added). If reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. 2005) (citing Edwards, 469 So.2d at 70). The prosecution receives the benefit of all "favorable inferences that may be reasonably drawn from the evidence" when determining if the evidence presented was sufficient to support the verdict. Smith v. State, 839 So.2d 489, 495(¶ 12) (Miss.2003).
¶ 11. To show that a defendant possessed marijuana with intent to distribute, the State must prove beyond a reasonable doubt that the defendant "knowingly or intentionally . . . possess[ed marijuana] with intent to sell, barter, transfer, manufacture, distribute or dispense. . . ." Miss. Code Ann. § 41-29-139 (Rev.2005). Because Stingley did not physically possess the marijuana, we must examine the issue of constructive possession.
[W]hat constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of `possession' is a question which is not susceptible to a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

Dixon v. State, 953 So.2d 1108, 1112(¶ 9) (Miss.2007) (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)) (emphasis added). Furthermore, if the defendant is the driver but not the owner of the car that contains the drugs, the State must show additional incriminating facts to link the defendant to the contraband. Ferrell v. State, 649 So.2d 831, 835 (Miss.1995).
¶ 12. The State presented evidence that established the following facts: (1) Stingley was in possession and control of his cousin's car when the contraband was found; (2) in Officer Pettis' opinion, the weight and value of the marijuana indicated that it was intended for distribution *1273 and sale; and (3) Officer Pettis testified that Stingley told her he had the marijuana because "[he] was going to have a Cheech and Chong party."
¶ 13. Stingley relies on the case of Fultz v. State, 573 So.2d 689 (Miss.1990). In Fultz, the defendant was arrested "after failing three field sobriety tests." Id. at 689. The officer later returned to inventory the vehicle Fultz was driving. Id. "While searching the trunk the officer opened a blue duffel bag." Id. at 690. The bag contained several small bags, which contained "seven and a half ounces [of marijuana]. . . . The vehicle belonged to the defendant's sister and at trial he denied any knowledge of the contraband in the truck." Id. The Mississippi Supreme Court found that the "only additional incriminating circumstance was that the defendant had a small amount of marijuana on his person at the time of the arrest . . . [and that this] standing, alone, is insufficient to prove any connection between the contraband and the defendant." Id. at 691. The court also found that the following facts were insufficient to connect the defendant to the drugs: Fultz admitting he used marijuana, "that he had made several `unexplained stops during the night,' and that it would be illogical for someone to leave their drugs in a vehicle that someone else would drive." Id.
¶ 14. Like Fultz, Stingley was driving the car of a family member, which contained a duffle bag full of marijuana in the trunk. Also, like Fultz, the officer in this case found the drugs after conducting an inventory search of the car. Unlike Fultz, however, there was evidence of Stingley's admission that he was to use the drugs found in the vehicle. In Magee v. State, 912 So.2d 1044, 1048(¶ 5) (Miss.Ct.App. 2005), an officer testified that the defendant in that case confessed to possession of the drugs. We found this testimony by an officer to be significant in establishing constructive possession. Id. at (¶¶ 5-10). Like the officer in Magee, Officer Pettis in this case testified that Stingley said he "was going to have a Cheech and Chong party," with the marijuana that the officer's found in his cousin's car. It is common knowledge that Cheech and Chong movies portrayed excessive drug use. This incriminating confession made in front of several officers after Stingley was arrested would amount to enough evidence to show that Stingley knew of the marijuana's presence in the trunk of the Chevrolet Caprice because his statement shows that he intended to use the drugs at a party. Thus, Stingley's first assertion of error is without merit.
II. Did the trial court err by the statement it made to the jury?
¶ 15. Stingley also argues that the trial court abused its discretion by stating, "[t]he Court dismissed the charges against the codefendant and you will only be deciding the case against Mr. Stingley." He argues that the trial court's statement is reversible error because the Mississippi Supreme Court has repeatedly stated:
jurors are very susceptible to the influence of the judge, and thus a judge "cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party." [citation omitted.] The Court further stated that "a reviewing court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption." [citation omitted.] Therefore, whether the jury was actually prejudiced or influenced by the statement is not for the *1274 Court to decide; rather, the mere fact that the statement was made to the jury creates a conclusive presumption of such prejudice.
Weatherly v. Welker, 943 So.2d 665, 669(¶ 10) (Miss.2006). Thus, Stingley argues that the trial court's statement was the equivalent of telling the jury they must find against Stingley. This he believes unfairly prejudiced the jury against him.
¶ 16. The State argues that any appealable issue regarding this statement was waived by Stingley's failure to object during trial. The Mississippi Supreme Court has held numerous times that "[f]ailure to make a contemporaneous objection [at trial] waives an issue for purposes of appeal." Spicer v. State, 921 So.2d 292, 305(¶ 22) (Miss.2006). The record shows that Stingley failed to object to the judge's statement during trial. Therefore, we find that Stingley is procedurally barred from raising this issue on appeal.
¶ 17. Notwithstanding the procedural bar, Stingley's argument also fails because any error by the trial court was cured by the jury instructions given. The trial court instructed the jury that "It would be a violation of your sworn duty to base your verdict upon any other view than that given in these instructions. . . . It is your exclusive province to determine the facts in the case and to consider the weight of the evidence for that purpose." We find that this issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF POSSESSION OF MARIJUANA WITH THE INTENT TO SELL, DISTRIBUTE, TRANSPORT OR DELIVER AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Stingley made this comment at the Tunica County Sheriff's Office after being taken into custody.